DIANE STANLEY, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9880–77.    Filed September 26, 1983.

*Ralph G. Jorgensen*, for the petitioner.
*Frank D. Armstrong, Jr.*, for the respondent.

GOFFE, *Judge*: The Commissioner determined deficiencies in the joint Federal income tax liabilities of petitioner and her husband for the taxable years 1973 and 1974 in the amounts

$9,283.37 and $30,531.42, respectively, and additions to tax under section 6653(a),[1] I.R.C. 1954 as amended, for these same years in the amounts $464.17 and $1,526.57, respectively.

After concessions by the parties, the issues for decision are:

(1) Whether petitioner and her husband filed joint Federal income tax returns for the taxable years 1973 and 1974.

(2) If the tax returns involved were not joint returns, whether we have jurisdiction to redetermine petitioner's individual income tax liabilities for the years involved.

(3) If the returns were not joint returns, and we may redetermine petitioner's individual income tax liabilities, whether there are deficiencies in petitioner's Federal income tax liabilities for the taxable years 1973 and 1974.

(4) If the returns were joint returns, whether there are deficiencies in petitioner's and her then husband's Federal income tax liabilities for the years involved.

(5) Whether petitioner is liable for the additions to tax for the taxable years 1973 and 1974.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Diane Stanley, the petitioner, resided in Whiteville, N.C., when she filed her petition in this case.

The petitioner was married to George Keith Stanley (George) on August 2, 1956. They had two daughters, Pamela Ann, born April 24, 1959, and Vickie Lynn, born June 3, 1961.

During the years 1973 and 1974, George operated a service station and package store in Whiteville, N.C., and petitioner was employed as a bookkeeper by Hill's Supermarket in Whiteville.

Petitioner and George experienced marital problems. Petitioner left George several times, taking her daughters with her, to stay at her parents' house. George came to petitioner's parents' house to return the children to his home. On at least one occasion, in 1965, he did this at gun point. Petitioner felt that the only way she could stay with her children was to live

---

[1]All section references are to the Internal Revenue Code of 1954 as amended.

with George. After such episodes, petitioner continued to live with George but began saving money so that she could leave him permanently. In the house where they lived, petitioner had a separate room in the rear with a separate entrance. She kept the door to George's portion of the house locked, and George did not have a key to the connecting door.

When income tax returns were due, petitioner told George that she wanted to file separately because George had entered into the service station and package store business on his own. George told petitioner that if she wanted to stay with her children, she would have to surrender to him her W-2 forms covering her wages at Hill's Supermarket. On one occasion, George forced petitioner into their car, drove at a speed in excess of 100 miles per hour and threatened to push petitioner out of the car with his feet. When George asked petitioner for her W-2 forms, petitioner believed that she would have to surrender them if she wanted to stay with her children. Therefore, petitioner, against her will, surrendered to George her W-2 forms for the taxable years 1973 and 1974, which reflected wages paid to her of $5,200 and $6,405, respectively, and income tax withheld of $613.60 and $894.85, respectively.

George used petitioner's W-2 forms in preparing joint Federal income tax returns for both 1973 and 1974. He signed both his name and petitioner's name to these returns. Petitioner did not authorize George to sign her name to these returns. Indeed, she never saw the returns until years later, after the commencement of the examination of the returns by the Internal Revenue Service.

George filed the returns with the Internal Revenue Service Center at Memphis, Tenn. They purported to be joint Federal income tax returns of George and petitioner. Petitioner did not file separate Federal income tax returns for the taxable years 1973 and 1974.

Petitioner and George separated in August of 1975 and were divorced on October 25, 1976. Since filing her petition in this matter petitioner has remarried and is now named Diane Stanley Todd.

George was subsequently convicted in Columbus County Superior Court of North Carolina of receiving stolen property, a felony.

On June 23, 1977, the Commissioner mailed a statutory notice of deficiency to petitioner and George for the taxable years 1973 and 1974 which was based upon the purported joint returns filed by George. He increased gross receipts of George's service station and package store business totaling $19,069.19 and $51,125.11 for the taxable years 1973 and 1974, respectively, using the bank deposits method. He also adjusted cost of goods sold and depreciation. The Commissioner also determined increases in petitioner's income in the amounts of $13,039.61 and $23,048.94 for the taxable years 1973 and 1974, respectively, using the source and applications of funds method. He did not, however, determine a probable source of additional income of petitioner. Petitioner received nontaxable gifts in 1973 and 1974 from "an admirer."

## ULTIMATE FINDINGS OF FACT

Petitioner surrendered to George her W-2 forms for 1973 and 1974 under duress. She did not join in the filing of joint Federal income tax returns with her husband for the taxable years 1973 and 1974, and the documents filed by her husband do not constitute joint returns.

## OPINION

The first issue is whether petitioner and George Stanley filed joint Federal income tax returns for the taxable years 1973 and 1974.

Taxpayers filing a joint return are jointly and severally liable for the tax imposed on the aggregate income required to be reported. Sec. 6013(d)(3). Although petitioner did not execute the returns in question, respondent contends that her acts of giving her W-2 forms to George and her failure to file separate returns establish her intent to file jointly with George.

Petitioner contends that she gave George the W-2 forms under duress and that if she had filed separate returns, George would have found out and injured her.

We have decided cases where the taxpayer sought to disavow a joint return which the taxpayer admittedly executed but under duress. Although a joint return results in joint and several liability, a return, even if it bears the signature of both spouses and is designated on its face as a joint return,

does not create joint and several liability with respect to a spouse whose signature on the return was executed under duress. *Brown v. Commissioner*, 51 T.C. 116, 119 (1968), and cases cited therein.

Where a spouse disavows the signing of a joint return, the spouse must show both (1) that he or she was unable to resist demands to sign the return, and (2) that he or she would not have signed the return except for the constraint applied to his or her will. *Brown v. Commissioner*, 51 T.C. at 119. This must be determined under a uniform Federal standard. *Stanley v. Commissioner*, 45 T.C. 555, 562 (1966). The self-determination of such action is measured by a wholly subjective standard, i.e., "whether the pressure applied did in fact so far affect the individual concerned as to deprive [her] of contractual volition." *Furnish v. Commissioner*, 262 F.2d 727, 733 (9th Cir. 1958), affg. in part and remanding in part 29 T.C. 279 (1957).

By their very nature, cases on this issue are decided upon the peculiar factual situations involved. In the case before us, both petitioner and George testified, contradicting each other. Observing the general appearance and demeanor of the witnesses at trial, we found petitioner to be more credible. While there is evidence that petitioner feared "physical bodily harm from [her] husband," which was the basis of the finding of duress in *Brown v. Commissioner*, we recognize that the special bond between a mother and her children can be even more important to a mother than her physical safety. We believe petitioner's testimony that the threat of separation from her children induced her, against her will, to do what George told her to do, and we find on these facts that this constituted duress. Under these circumstances, we find neither petitioner's actions nor her inaction establish an intent to file jointly with George. Petitioner did not execute the returns. Accordingly, we find as a fact that petitioner did not file joint returns with George for either of the taxable years 1973 or 1974.

We must now consider whether we have jurisdiction to redetermine petitioner's separate income tax liabilities for 1973 and 1974 when the statutory notice of deficiency is based upon joint returns and where we have decided that no joint return was filed.

In the past, we held under similar circumstances that we did not have jurisdiction to redetermine the individual income tax liability of the wife who was held not to have joined in the filing of a joint return. We were, however, reversed. *Burer v. Commissioner*, 340 F.2d 112 (5th Cir. 1965), revg. *Stages v. Commissioner*, T.C. Memo. 1961–267. We have reexamined the question and conclude that the Court of Appeals was correct in *Burer*; accordingly, we hold that we have jurisdiction over petitioner. See *Romm v. Commissioner*, 245 F.2d 730 (4th Cir. 1957), affg. and revg. T.C. Memo. 1956–104.

In his statutory notice of deficiency, the Commissioner determined that petitioner received unreported income in 1973 and 1974, using the source and application of funds method. He did not, however, determine any possible source of such income. Petitioner's uncontradicted testimony is that she received gifts in 1973 and 1974 from "an admirer" which, of course, would not be taxable. Petitioner had no financial interest in the businesses operated by George. We believe the uncontradicted testimony of petitioner as to the source of the funds which she did not report as income. There is no evidence in the record that any such funds represented taxable income.

In view of our finding that petitioner received no unreported taxable income, we need not decide who has the burden of proof because we would come to the same conclusion regardless of the location of the burden of proof.

The Commissioner also determined additions to petitioner's income tax liabilities for 1973 and 1974 under section 6653(a). That section provides for an addition to tax if any of the underpayment of tax is due to negligence or intentional disregard of rules and regulations. Because we have held that petitioner received no unreported income in either year, if her tax is underpaid it is due to inadequate withholding at the source of her wages and her failure to file separately. The Commissioner determined no addition to tax against petitioner for failure to file a separate return. Moreover, her wages were reported on the "joint returns," her withheld tax was applied to the "joint liabilities," and the tax due on the "joint returns" was paid. Under such circumstances, we hold that petitioner is not liable for the addition to tax for 1973 or 1974.

The parties can recompute petitioner's individual income tax liabilities for the taxable years 1973 and 1974 under Rule 155 of the Court's Rules in accordance with our opinion.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue.