ANN C. MACAUX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Macaux v. Commissioner
Docket No. 2340-81
United States Tax Court
T.C. Memo 1983-664; 1983 Tax Ct. Memo LEXIS 131; 47 T.C.M. (CCH) 225; T.C.M. (RIA) 83664; October 31, 1983. Robert E. Nelson, for the petitioner. Ellen T. Friberg, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: On November 14, 1980, respondent issued two statutory notices of deficiency, each of which was addressed to petitioner and to her former husband (H). In one of the notices, respondent determined deficiencies in income taxes and additions to tax under sections 6651 [1] and 6653(a) for the years 1972, 1973, 1974, and 1975. Respondent now concedes that the statutory notice for the taxable years 1972 through 1974 was not *132 mailed within the period of the statute of limitations applicable to petitioner. Respondent also concedes that petitioner has no liability for the deficiency or for the additions to tax for the taxable year 1975 because she qualifies as an innocent spouse under section 6013(e) for that year. The other statutory notice determined deficiencies in and additions to tax for the years 1976 and 1977 as follows: Tax
Additions to Tax
Year
Deficiency
Sec. 6651
Sec. 6653(a)
1976
$47,213.94
$11,803.48
$2,903.00
1977
209,376.27
10,468.00
Petitioner does not dispute the amount of the deficiencies because she does not have access to any facts that would allow her to do so. She does, however, contend that she is not liable for the deficiencies or for the additions to tax because (1) the joint returns for 1976 and 1977 were signed under duress, and (2) she qualifies as an innocent spouse under section 6013(e) for 1977. FINDINGS OF FACT Some of the facts have been stipulated, and the *133 stipulation of facts and exhibits, excepting items to which respondent's objections were sustained, are incorporated herein by reference. Respondent does not dispute petitioner's testimony but argues that the circumstances described by her do not lead to the ultimate findings of fact and conclusions of law urged by petitioner. At the time she filed her petition herein, petitioner resided in Green Bay, Wisconsin. She was born and raised in that city. In November 1970, at the age of 17, petitioner married H. She did so over the objection of her parents, who had read in a newspaper that H, then 18, had been charged with possession and sale of drugs. After seeking further information, the parents concluded that H was an undesirable person because he had been in difficulty with the law since he was 14. They discussed their conclusion with petitioner. During the marriage, petitioner and H had two children. Throughout the entire period of the marriage, petitioner earned no taxable income. They lived, and H worked, in Toronto, Canada, until 1972. In 1972 they moved to Katmandu, a city in Nepal near India. In January 1975, they moved to Baraboo, Wisconsin, where they first *134 rented and then purchased a house. Although they resided in Wisconsin during 1976 and 1977, they travelled to many places, including Afghanistan and Australia, during those years. Petitioner and H continued to live in Baraboo, Wisconsin, at least through August 21, 1978. During the years of their marriage, petitioner observed that H was in the business of drug trafficking. To some extent he engaged in the antique business, but that business appeared to petitioner to be a cover for the drug business. H insisted that petitioner accompany him on various business trips and that she assist H in dealing with his business associates. Several times petitioner observed large sums of cash, which H told her were from the sale of drugs. On various occasions, H advised petitioner that he had obtained a false passport, that he had hired a "hit man," and that he was able to travel freely, though illegally, in and out of the United States by contacting an attorney who was able to secure favors from customs officials. H took drugs and carried firearms, and he was arrested on several occasions. H encouraged petitioner to use drugs and abused her physically and psychologically, sometimes using *135 their children as part of his psychological abuse. During the marriage, H gave petitioner enough money to pay bills and to run the household, but the only luxury items purchased were for H. In 1980, petitioner, H, and the children were in England. While H was temporarily absent, petitioner left him and returned with the children to her parents' home in Wisconsin. Petitioner and H were divorced in December 1980. Since the time of her divorce, petitioner has attempted to secure a normal life for herself and for her children. During the time of the marriage, H owned two parcels of real estate in Australia, one of which was held jointly with his brother. At no time during her marriage did petitioner have any ownership interest in either piece of Australian real estate. Federal income tax returns for the years 1972 through 1974 were prepared by a Milwaukee, Wisconsin, law firm and were filed as joint returns of petitioner and H on September 9, 1976. A Federal income tax return for the year 1975 was prepared by a certified public accountant in Milwaukee and was filed as a joint return of petitioner and H on September 9, 1976. A Federal income tax return for the year 1976 *136 was prepared in January 1978 by the law firm that had prepared the returns for 1972 through 1974 and was filed on January 23, 1978 as a joint return of petitioner and H. A Federal income tax return for the year 1977 was prepared by Alexander Grant & Company, Certified Public Accountants, and was filed on August 25, 1978, as a joint return of petitioner and H. All of these returns bore the signature of petitioner. In 1978, when she signed the returns for 1976 and 1977, petitioner assumed that the returns were correctly prepared. She saw documents relating to preparation of the returns, but she did not examine them or compare them to the entries on the returns. She did not question her husband about the accuracy of either the 1976 or 1977 return. She never told her husband that she did not want to sign either return. H did not make any specific physical threats against petitioner at the time she signed either return. Petitioner would not have refused to sign the tax returns at the demand of H because she "regarded H as posing a physical threat at any time [she] disagreed with anything he wanted [her] to do." The income tax returns filed as aforesaid reported the following *137 amounts of business income attributable to business operated by H: Year
Business Income
1972
$36,192.00      1973
61,791.00      1974
33,934.00      1975
( 24,398.00) Loss
1976
40,646.32      1977
147,828.00      The 1976 return reported gross receipts from H's business as an antique dealer to be $125,002.40, and the 1977 return reported such gross receipts to be $298,181. In the notice of deficiency, respondent did not determine that H had received any unreported income during the year 1976, and the deficiency determined for that year results from disallowance of deductions. With respect to 1977, however, respondent determined by the bank deposits method that H had unreported gross receipts of $145,568; respondent also disallowed various deductions claimed on the 1977 return. On April 13, 1981, petitioner, representing herself, filed an amended petition herein in which she stated: "I do not believe it is equitable to assess the taxes or penalties against myself since section 6013(e)(1) of the Internal Revenue Code protects me from any alleged tax deficiency of my former spouse." The *138 issue of duress was not raised until after the entry of appearance by counsel for petitioner on November 18, 1982. ULTIMATE FINDINGS OF FACT (1) Petitioner's signature on the 1976 return filed January 23, 1978, was not the result of duress. (2) Petitioner's signature on the 1977 return filed August 25, 1978, was not the result of duress. (3) The gross receipts determined by respondent to have been omitted from the 1977 return were attributable to H and were in excess of 25 percent of the amount of gross income stated in the return. (4) At the time she signed the 1977 return, petitioner did not know of, and had no reason to know of, the omitted gross receipts. (5) Petitioner did not benefit directly or indirectly from the items omitted from gross income reported on the 1977 return, and, taking into account all other facts and circumstances, it is inequitable to hold her liable for the deficiency in tax for 1977 attributable to such omission. (6) Deficiencies in tax for the years 1976 and 1977 were not due to negligence or willful disregard of rules and regulations. OPINION Petitioner's description of her life with H is uncontroverted and credible. The parties differ *139 primarily as to how we should apply the legal tests to the evidence in deciding whether petitioner may be relieved from all or any part of the liabilities determined by respondent for 1976 or 1977. Duress
Total relief from liability for both years depends upon whether petitioner carried her burden of persuading us that she signed the returns under duress and that, therefore, they are not truly joint returns.The applicable law was most recently summarized in [Diane] Stanley v. Commissioner,81 T.C. No. 35 (Sept. 26, 1983), as follows: Although a joint return results in joint and several liability, a return, even if it bears the signature of both spouses and is designated on its face as a joint return, does not create joint and several liability with respect to a spouse whose signature on the return was executed under duress. Brown v. Commissioner,51 T.C. 116, 119 (1968), and cases cited therein. Where a spouse disavows the signing of a joint return, the spouse must show both (1) that he or she was unable to resist demands to sign the return, and (2) that he or she would not have signed the return except for the constraint applied to *140 his or her will. Brown v. Commissioner,51 T.C. at 119. This must be determined under a uniform Federal standard. [Hazel] Stanley v. Commissioner,45 T.C. 555, 562 (1966). The self-determination of such action is measured by a wholly subjective standard, i.e., "whether the pressure applied did in fact so far affect the individual concerned as to deprive [her] of contractual volition." Furnish v. Commissioner,262 F.2d 727, 733 (9th Cir. 1958), affg. in part and remanding in part 29 T.C. 279 (1957). By their very nature, cases on this issue are decided upon the peculiar factual situations involved. * * * We are not unsympathetic to petitioner here. We conclude, however, that she has not proven the second element necessary to meet the test of duress set forth in the applicable case law, i.e., she has not convinced as that she would not have signed the return except for the constraint applied to her will. Petitioner testified at length to physical abuse and psychological intimidation by H. She stated that on seven occasions he beat her to where she "felt that it was a life threatening sort of situation." She *141 did not, however, identify any incident occurring during 1977 or 1978. In response to questions from her counsel, petitioner did testify that she would not have signed the 1976 and 1977 returns in 1978 if H had not been abusing her or if she had left him prior to the time the returns were signed and that she would not sign the returns if they were presented to her today.She stated that she had no way of knowing whether the amounts shown in the returns were correct or incorrect, that when she signed the returns she saw the documents or information from which they were prepared but did not examine them, and that she did not tell H that she did not want to sign the returns. At trial, she claimed reluctance to sign the returns because of her aversion to H's involvement in drug trafficking and her belief that the returns did not disclose the true nature of his activities. Petitioner called as a witness a psychiatrist who had examined petitioner for the first time five days prior to the date of trial. He expressed an opinion that during 1978 petitioner was psychologically unable to refuse to sign returns presented to her by H. He testified that petitioner was intimidated by H and *142 signed tax returns just as she did everything else for him. He did not offer any opinion as to whether she would have signed the returns if she had not been dominated by H. The psychiatrist further testified that petitioner felt a great deal of guilt about her past life. Petitioner sought to introduce evidence of events occurring in 1966, 1967, 1969, 1979, 1980, and 1981 as proof of H's character. The Court sustained objections to such evidence. Petitioner argues on brief that the offered evidence is relevant in establishing a pattern of conduct creating duress. Petitioner has not persuaded us that the rulings on the evidence are erroneous, but even if the evidence were admitted, it would merely confirm our conclusions reached herein. Evidence of H's early troubles with the law confirms other evidence that petitioner knew of his character when she married him. Her testimony at trial shows that she had knowledge of his activities yet cooperated with him and actually assisted him in dealing with business associated during the years of their marriage. The argument that the evidence establishes a contnuing pattern of abuse is not an accurate characterization of petitioner's testimony *143 or of the evidence to which objections were sustained. She apparently made no attempt to leave H during 1978 when she was in Wisconsin, and she has not satisfactorily explained her failure to do so. By contrast, the events described in her testimony as occurring in 1979 and 1980 appear extreme and ultimately led to her disassociation with H. Whatever the pattern of H's conduct may have been, she has not shown that her reluctance to be associated with it arose prior to the extreme circumstances occurring in 1979. We conclude that this case is indistinguishable from and controlled by [Hazel] Stanley v. Commissioner,45 T.C. 555 (1966), in the respects shown by the following excerpts from that opinion: Petitioner's presentation was directed chiefly at showing [her former husband's] domineering nature and petitioner's inability to resist his demands. Petitioner's proof of these aspects of the case was adequate. We are satisfied that if petitioner had felt any reluctance about signing the returns in question when they were presented to her by [her former husband], she might nevertheless have signed them out of fear of the consequences of angering her *144 [former] husband. But petitioner was required to prove such reluctance; she had to prove that she would not have signed the returns except for the constraint applied to her will through her fear of [her former husband]. Such a rule is necessary to prevent a party from avoiding the consequences of an act which he would have performed even if he had not been subjected to pressure. * * * We are of the opinion that petitioner has failed to prove the necessary causal relationship between her fear of [her former husband] and her signing of the returns, and we so hold. * * * The question of petitioner's state of mind in signing the returns is one of proof, and a reason or explanation for some opposition to signing would add support to her bare claim of unwillingness, just as proof of specific incidents at the time of the signing would add such support. Conversely, absence of such proofs detracts from petitioner's claim, because a reason for opposition and incidents at the time of signing would often (though not always) be companions to any real reluctance to sign. It is in this regard that the lack of evidence of unpleasant incidents in connection with petitioner's signing *145 the returns becomes relevant. Cf. Irving S. Federbush,supra at 757 (lack of specific incidents when the returns were signed relied upon as one factor indicating no duress). It is not, as respondent seems to argue, that there can be no finding of involuntariness without proof of such incidents. Cf. Furnish v. Commissioner,supra.Another factor indicating that petitioner did not sign the returns involuntarily is her failure to raise the issue until [shortly before the trial, rather than in her original petition]. * * * * * * Petitioner's proof establishes no more than that she signed the returns under the same state of mind existing when she complied with [her former husband's] other directions. We are not prepared to find, on the record before us, that every act performed by petitioner at [her former husband's] direction during the greater portion of their married life was performed involuntarily. Furthermore, we do not believe (and petitioner does not appear to argue) that petitioner was mentally incompetent during the taxable years. * * * We are not holding that [her former husband's] treatment of petitioner during the time they *146 were married could not constitute constraint sufficient to cause petitioner to sign the returns against her will. But constraint alone is not enough to constitute duress; there must result from the constraint an act which would not otherwise have been performed. Cf. Restatement, Contracts, sec. 492, comment f,supra. We have carefully considered petitioner's relationship with and fears of [her former husband] in evaluating the evidence of record; we conclude that petitioner has not proven the returns to have been signed by her involuntarily. This failure of proof is fatal to petitioner's case. [Fn. ref. omitted; 45 T.C. at 562-565.] In the [Hazel] Stanley case the petitioner did not state a reason for her opposition to signing the returns. Petitioner here did state a reason, but we believe that such testimony at trial was an afterthought, and we give it little weight. The total thrust of her testimony is not that she wished to disassociate herself from incorrect tax returns filed by H but that she wished to disassociate herself from the lifestyle that she shared with him for approximately 10 years. Petitioner's testimony that she would not *147 have signed the returns but for her fear of her husband is merely reflective of her present state of mind. Her attempts to rationalize her execution of the tax returns is consistent with her efforts to overcome the adverse effects of her prior association with H upon her present life. We do not doubt that she genuinely regrets signing the tax returns.We must, however, decide this case on the basis of objective facts shown by the evidence of what occurred at or about the time she signed the returns. The objective facts concerning the returns are that the returns were prepared by professionals based upon apparent documentary support and, at least as to 1977, the returns reported income substantial in amount and in relation to that reported for prior years. We do not believe, for example, that, if she had been free of fear, petitioner would have insisted that H disclose on the returns that he was earning such substantial income through the sale of drugs. Petitioner argues that she should not be required to satisfy the second test set forth in cases dealing with duress, i.e., that she would not have signed the returns except for the constraint applied to her will, because she was *148 so dominated at the time in question that she had no ability to indicate any reluctance to sign the returns. Petitioner's argument would totally negate the well-established rule as to what constitutes duress. As stated in [Hazel] Stanley v. Commissioner,supra, this requirement is necessary to prevent a party from avoiding the consequences of an act that the party would have willingly performed. Without this requirement, we would anticipate attempts to disavow joint returns by one spouse or another upon termination of any marital relationship in which one spouse was substantially more dominant than the other. It is unlikely that in many marriages one spouse will risk domestic violence or even sacrifice domestic tranquility for the protection of the Federal revenue. We decline to allow hard cases to make bad law. In any event, we are not satisfied that the evidence in this case justifies the conclusion that as of 1978 petitioner's circumstances were so extraordinary as to justify altering or disregarding the clear requirements of the case law. Innocent Spouse Relief
Section 6013(e) provides as follows: (e) Spouse Relieved of Liability in Certain Cases.-- *149 (1) In general. Under regulations prescribed by the Secretary, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. Our conclusion that petitioner did not sign the 1976 and 1977 returns under duress is confirmed by her argument that she is entitled to relief *150 with respect to 1977 under section 6013(e) because, in addition to meeting the other requirements of that section, she had no reason to know of the omission of gross receipts. In other words, she cannot and does not claim that she believed that the return was wrong. The fact that the return for 1977 reports gross receipts of almost $300,000 and net business income of almost $150,000 convinces us that her most likely state of mind was that the return did not understate income. [2] The amount reported greatly exceeded amounts reported on earlier returns, and the evidence does not suggest that the lifestyle experienced by petitioner and H during 1977 could not have been supported out of the reported earnings. In this connection we have considered the fact that the unreported income has been determined by a reconstructive method, i.e., by reference to bank deposits. There is no reason to conclude that petitioner was aware of the total amount of deposits or of specific items of unreported income. *151 Based upon the totality of the evidence in this case, we also conclude that the lifestyle maintained by petitioner and H was not a benefit to petitioner and that it would be inequitable to hold petitioner liable for the deficiency in tax attributable to omission of a part of H's drug trafficking income. Additions to Tax
Section 6013(e), of course, provides relief only with respect to deficiencies attributable to omitted income. Petitioner does not and cannot, therefore, contend that it applies to the liability determined for 1976. As to the additions to tax for late filing of the 1976 return under section 6651, petitioner has the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure; see Neubecker v. Commissioner,65 T.C. 577, 586 (1975). To avoid liability for the addition to tax under section 6651(a), petitioner would have to show reasonable cause for late filing, and she has not done so. Respondent's determination in this regard must therefore be sustained. To the extent that the deficiency for 1977 is attributable to omitted income, petitioner may be relieved of liability for additions to tax because we have concluded that she *152 is an innocent spouse. See section 6013(e). With respect to the portion of deficiencies for 1976 and 1977 attributable to disallowed deductions, petitioner has show that the returns for those years were prepared by professionals and were based on documents provided to those professionals by H. She has thus carried her burden of going forward with evidence that the deficiencies were not due to negligence or intentional disregard of rules and regulations. See Hill v. Commissioner,63 T.C. 225 (1974), affd. without published opinion 551 F.2d 313 (9th Cir. 1977); Woodbury v. Commissioner,49 T.C. 180 (1967). In the absence of evidence to the contrary, we are persuaded that additions to tax under section 6653(a) should not be sustained. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. We do not accept petitioner's argument that to be disqualified under sec. 6013(e)(1)(B)↩ she must have known that the omitted income exceeded 25 percent of gross receipts. This argument is not supported by anything in the statute or the legislative history or logic. This argument would suggest that a petitioner would qualify as an innocent spouse if she believed, for example, that 20 percent of gross receipts were omitted when in fact 25 percent of such receipts were omitted.