BARRY P. HERSHONE and CAROL HERSHONE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hershone v. Commissioner
Docket No. 1508-79
United States Tax Court
T.C. Memo 1984-199; 1984 Tax Ct. Memo LEXIS 472; 47 T.C.M. (CCH) 1565; T.C.M. (RIA) 84199; April 23, 1984. Barry P. Hershone, pro se. Edward I. Foster, for petitioner Carol Hershone. Linda S. Bednarz, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a statutory notice dated December 20, 1978, respondent determined a deficiency in the amount of $54,518.00 in petitioners' Federal income tax liability for 1974. This deficiency was attributable to issues now settled. The only issue for decision herein is whether the 1974 Federal income tax return was signed under "duress" by petitioner Carol Hershone, thereby relieving her of joint and several liability. At the time of filing their petition herein, on February 5, 1979, petitioner *473 Barry P. Hershone resided in Haverford, Pennsylvania. Petitioner Carol Hershone resided in Wynnswood, Pennsylvania. Petitioner Carol Hershone has subsequently remarried and is now known as Carol Stein. At the time their joint petition was filed, petitioners were husband and wife and were represented by the same attorney. Petitioners' counsel withdrew as to both petitioners on April 13, 1982. On October 4, 1982, petitioner Carol Hershone, through her new attorney, filed a motion to amend her petition to raise the issue concerning whether she signed the 1974 return under duress. FINDINGS OF FACT Petitioners Barry and Carol Hershone were married in 1959, and they had two children: Mitchell, born in 1959 and Helene, born in 1967. During the years 1959 through 1971, the Hershone's social and economic circumstances were quite modest. Barry was an optometrist and a teacher of those with reading disabilities. Beginning in 1970, the Hershones experienced a major change in their financial and social circumstances. They moved to a house in an affluent neighborhood and furnished their house with the help of an interior decorator at a cost of over $100,000. They purchased a Maserati, *474 Jensen and Rolls Royce, had the use of an airplane and helicopter, vacationed in Palm Beach, Florida and Nassau, Bahamas, and acquired a variety of expensive jewelry and clothing. From 1971 through 1975, Barry Hershone owned a reading center for children with reading difficulties and which later became a regular prep school, and he owned a number of other businesses related to farming. Petitioners' financial statement, which is in evidence, reflected a net worth of approximately $1.5 million on February 21, 1973. The Hershone's marriage started to deteriorate in late 1973 or early 1974. Arguments between Barry and Carol occurred, abusive language was used and some pushing and shoving apparently occurred. Barry first separated from Carol in the summer of 1974 for approximately six weeks. As is often the case, the marital difficulties arose contemporaneously with financial difficulties. During 1973-1975, Barry experienced a number of business reversals that eventually led to the loss of the businesses enumerated above. A default judgment in the amount of $686,504.92 was entered against Barry and Carol Hershone on June 26, 1975 arising out of one of the businesses. Although *475 Carol was not aware of the details concerning this event, she was aware that the financial outlook was darkening for Barry and, because she was dependent upon him for financial support, for her and the children as well. Petitioners each retained their own attorneys to represent them in connection with the divorce proceedings. Carol contacted her attorney on a number of occasions with questions concerning her divorce from Barry and related matters. On one such occasion, in or about June of 1975, she contacted her attorney regarding questions that she had concerning a proposed sale of jointly held real estate by Barry. The 1974 Federal income tax return in question bears the signature of both Barry and Carol Hershone. It was prepared by Albert Zeitz, a certified public accountant, and was filed with the Internal Revenue Service Center at Philadelphia, Pennsylvania on or about June 15, 1975. As filed, it indicated a refund due of $17,494.00. After a debit of $5,959.25 to satisfy an outstanding Federal tax liability for 1973, the balance of this sum was sent to petitioners at the address indicated on the return, which was the address at which Carol Hershone was living. After *476 paying still another tax liability, the parties divided the proceeds equally. Petitioners gave completely different accounts of the events surrounding the signing of the 1974 tax return in June of 1975. Carol testified that Barry confronted her in person and demanded that she sign the return under threat of death. Barry testified that the had a bus driver from one of his schools deliver the return to her for her review and signature, in order to avoid any physical confrontation with Carol. Carol's attorney was mailed a copy of the return prior to the time she signed it. During the month in which she signed the return, Carol was in communication with her attorney on several occasions with respect to other matters, including the previously mentioned proposed sale of jointly held real estate by Barry, but neither she nor her attorney recall if they specifically discussed with each other the return. She did not inform or complain to her attorney that Barry had forced her to sign the return against her will, nor did she ever attempt to disavow her signature in any way until over three years after the petition in this case was filed. Carol also filed joint Federal income tax *477 returns for 1975 and 1976 with Barry and no claim has been made that those returns were anything other than joint returns. OPINION
There is no provision of the Internal Revenue Code of 1954, as amended which specifically addresses or defines duress. Section 6013 (d)(3) provides that if married persons elect to file a joint Federal income tax return, "the liability with respect to the tax shall be joint and several." However, it is well settled case law that a return, "even if it bears the signature of both spouses and is designated on its face as a joint return, does not create joint and several liability with respect to a spouse whose signature on the return was executed under duress." Stanley v. Commissioner,81 T.C. 634, 637-638 (1983). In resolving previous issues of duress, this Court has developed a two pronged test. First enunciated in Stanley v. Commissioner,45 T.C. 555 (1966), that test provides that the taxpayer must prove (1) that there was an inability to resist the coercer's demands (i.e., that the person's will was overcome), and *478 (2) that he or she would not have signed the return expect for the constraint applied to his or her will through fear of the coercer. 45 T.C. at 562. In elaborating on this standard in the case of Brown v. Commissioner,51 T.C. 116 (1968), this Court noted that "[i]n other words, petitioner must show not only that she had no choice in executing her signature but also that she was 'reluctant' to do so." 51 T.C. at 119. Respondent's position is that petitioner Carol Hershone has not established either element of the test. For the reasons set forth below, we agree with respondent. The first critical element of duress which must be satisfied is that the spouse claiming duress must show that she was unable to resist demands from the coercer spouse to sign the return. In meeting this standard it must be established that "the pressure applied did in fact so far affect the individual concerned as to deprive [her] of contractual volition." Furnish v. Commissioner,262 F.2d 727, 733 (9th Cir., 1958), remanding on other grounds 29 T.C. 279 (1957). In the present case, we are satisfied that petitioner Carol *479 Hershone was not deprived of her contractual volition at the time she signed the return. Certainly, there appears to have been a number of instances of abuse to which she was subjected by her husband. However, she was living separately from her husband, and she and he were both represented by attorneys throughout the relevant time period. Indeed, she consulted her attorney at or about the same time she signed the return in question (viz., June, 1975) regarding a land sale which had been proposed by Barry. She had questions with respect to the proposed transaction and refused to sign the documents pertaining thereto until her questions were resolved. If she had been forced against her will to sign the 1974 tax return we would have expected her to have complained to her attorney prior to 1982. The return in question, or a copy thereof, was sent to Carol's attorney for his review prior to signing by Carol. Yet, there is no evidence that her attorney had any objections to the proposed joint filing. Carol did not file a separate 1974 income tax return, and she did not attempt to disavow her signature on the return until October of 1982, over seven years after the fact. She filed *480 joint Federal income tax returns with Barry in 1975 and 1976, and has never claimed duress as to those returns. It would appear that the idea of disavowing the return on the basis of duress was an "affterthought". See Federbush v. Commissioner,34 T.C. 740, 755 (1960), aff'd per curiam 325 F.2d 1 (2nd Cir., 1963). With regard to the second test (namely, proving that petitioner would not have signed the return except for the constraint applied to her will), petitioner Carol Hershone has failed to articulate any valid reason why, in the absence of any coercion from Barry, she would not have chosen to sign the return. She enjoyed the benefit of filing a joint return with Barry (viz., a lower overall tax rate). Her attorney never raised any objection to the proposed return. As the return was filed she stood to share in a refund of $17,494.00. Given her unstable and deteriorating financial condition, signing the return would not have been an unattractive alternative and in fact she shared in the proceeds of the refund. Petitioner cites the case of Stanley v. Commissioner,81 T.C. 634 (1983) as support for her position. In that *481 case, petitioner surrendered her W-2 forms to her husband who prepared what purported to be joint Federal income tax returns which he executed for her without her consent. We held that the W-2 forms were surrendered under duress and that she did not consent to the filing of joint returns. Our conclusion in that case was based primarily on a petitioner's legitimate fear that her children would be taken from her by her husband if she did not surrender the W-2 forms. A claim of duress made under similar factual circumstances to those which exist herein was rejected by this Court in Estate of Aylesworth v. Commissioner,24 T.C. 134 (1955). In that case the taxpayer never filed separate returns for the years for which duress was being asserted (1948 through 1951) even though she had separate income and she never disavowed her signature on any of the returns within a reasonable time. The fact that the taxpayer had begun to consult with legal counsel as early as 1949 about her marital difficulties was also a factor which weighed against her claim. 24 T.C. at 146. In conclusion, we hold that the 1974 Federal income tax return signed by Barry and Carol *482 Hershone constituted a valid joint income tax return. Petitioners are jointly and severally liable for the deficiency thereon. Decision will be entered for the respondent.