EMILY BELL, Petitioner v. COMMISSIONER of INTERNAL REVENUE, Respondent
Bell v. Commissioner
Docket No. 3304-76.
United States Tax Court
T.C. Memo 1984-235; 1984 Tax Ct. Memo LEXIS 446; 47 T.C.M. (CCH) 1769; T.C.M. (RIA) 84235; April 30, 1984. Iven R. Taub, for the petitioner. Frances J. Honecker, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judges: Respondent determined a deficiency in petitioner's and her former husband's Federal income tax liability in the amount of $29,370.20 for 1972 in a notice of deficiency dated January 29, 1976. Petitioner's former husband, Steven Singer, filed a petition in Bankruptcy on September 24, 1975, which bankruptcy proceeding *447 is still pending. Petitioner, Emily Bell, is not a party to that proceeding. However, petitioner and respondent have stipulated that the resolution of the underlying tax deficiency in the bankruptcy proceeding will be binding upon the parties herein. The only issue for decision in this proceeding is whether petitioner signed the 1972 Federal income tax return under duress and therefore should be relieved of joint and several liability for whatever deficiency is determined to exist by the bankruptcy court. FINDINGS of FACT Petitioner resided in Teaneck, New Jersey, at the time the petition was filed. The 1972 joint Federal income tax return was timely filed. Some facts were stipulated and are so found. Petitioner (also referred to as "Emily") and her former husband (referred to as "Steven") were married in 1960. Three children were born of the marriage. During the marriage Emily was a homemaker and did not work outside the home. The sole support of the family was derived from Steven's employment. Steven generally made all the financial decisions except where major expenditures were involved, such as the purchase of their residence. Steven and Emily filed joint Federal *448 income tax returns throughout their marriage, from 1960 until their divorce in 1974. In 1971, marital problems arose between Steven and Emily, and they separated in August of that year. Both parties sought professional counseling in connection with these marital problems. Emily received counseling throughout 1971 and 1972. After separating from Emily, Steven continued to provide the sole support of the family. In addition to providing support, Steven frequently visited the children, which visits Emily encouraged. There is no indication Steven physically harmed Emily or the children. Emily, however, testified that she feared for the childrens' safety when the children would spend time with Steven after she and Steven had had an argument. During the separation, there were several emotional confrontations between Steven and Emily. The arguments usually pertained to the status of the divorce proceeding, the financial future of the children and herself and their relationship. Although no physical abuse occurred, these arguments often resulted in shouting, and Steven apparently threatened to cut off all financial support. At least in part, as a result of the arguments, Emily *449 experienced strong physical side effects and eventually was diagnosed as having ulcerative colitis. During early 1973, Steven and Emily, represented by independent counsel, began negotiations for a final divorce. Negotiations continued throughout the year and resulted in a signed agreement dated October 23, 1973. The divorce became final on January 23, 1974. Steven and Emily testified differently concerning the circumstances of the signing of the 1972 Federal income tax return on April 15, 1973. Steven recalled no particular problems with or argument concerning the signing of the return. Emily, however, recalled that Steven came to the house on Sunday, April 15, to pick up the children for his weekly visit with them. She testified that Steven gave Emily the first page of the return and told her to sign it. When she questioned Steven about the return, she recalled that he became angry and abusive whereupon she signed the return. Soon after signing the return, Emily discussed the return with her attorney, but the first time she raised the issue of duress and attempted to disavow the return was in December of 1983. At no time after signing the 1972 return did Emily submit *450 an amended return indicating that she had not joined in the 1972 return as filed. OPINION Section 6013(d)(3) of the Internal Revenue Code of 1954, as amended, provides that "if a joint [Federal income tax] return is made, * * * the liability with respect to the tax shall be joint and several." Under certain circumstances, however, a taxpayer may be relieved of joint and several liability even where he or she has signed a return designated as a joint return. Where a taxpayer executes a return under duress, he or she will be relieved of joint and several liability. See Stanley v. Commissioner,81 T.C. 634 (1983); Brown v. Commissioner,51 T.C. 116 (1968) and cases cited therein. In cases where duress is claimed, this Court has resolved the issue by applying a subjective standard; i.e., "whether the pressure applied did in fact so far affect the individual concerned as to deprive [the spouse] of contractual volition." Furnish v. Commissioner,262 F.2d 727, 733 (9th Cir. 1958), *451 affg. in part and remanding in part 29 T.C. 279 (1957), quoting 17 C.J.S. Contracts, sec. 175; Brown v. Commissioner,supra, at 119. In applying this standard, the Court has developed a two-pronged test first announced in Stanley v. Commissioner,45 T.C. 555 (1966). That test provides that the texpayer must prove (1) that he or she was unable to resist the demands to sign the return and (2) that he or she would not have signed the return but for the constraint applied to his or her will. Stanley v. Commissioner,45 T.C. at 562. See also Brown v. Commissioner, supra, at 119. Respondent contends that petitioner in the present case has not established either element of the test. We agree with respondent. In order to satisfy the first element of duress under the test enunciated in Stanley v. Commissioner,45 T.C. 555 (1966), petitioner must prove that she was unable to resist Steven's demands that she sign the 1972 Federal income tax return. To this end, petitioner claims that she suffered a long and continued course of mental intimidation. Petitioner claims that Steven's emotional *452 outbursts and threats to cut off all financial support constituted such a course of mental intimidation. In Brown v. Commissioner,supra, this Court determined that a spouse who had been subjected to a long and continued course of mental intimidation was found to have signed the return under duress. In Brown, the taxpayer's former husband "displayed little regard for [the taxpayer] and her welfare and mental and physical wellbeing. He had a violent temper and often struck and bruised [the taxpayer]. * * * He intimidated his children to the point that eventually both ran away from home." Also, the taxpayer's husband threatened to strike her if she refused to sign the tax returns. Brown v. Commissioner,supra, at 117. In the present case, "a long and continued course of mental intimidation" has not been established. Steven always provided for the welfare of Emily and the children before, during and after the separation. He never physically abused Emily or the children nor did he threaten to do so. Arguments occurred and threats concerning financial support were made, but it does not appear that Emily was so intimidated as to *453 be deprived of her volition. Petitioner also contends that she was unable to resist Steven's demands out of fear for the safety or custody of the children. In Stanley v. Commissioner,81 T.C. 634 (1983), we recognized a realistic fear of forced separation from children may constitute duress. In this case, there were no threats either to harm the children or to deprive Emily of custody of the children. Petitioner never attempted to limit Steven's rights to visitation. On the contrary, she encouraged the frequent visitations which she believed benefited the children. The second element of duress under the test announced in Stanley v. Commissioner,45 T.C. 555 (1966), requires that petitioner prove she would not have signed the return but for the constraint applied to her will. Petitioner has not established that she signed the 1972 Federal income tax return solely because of pressure applied by Steven. Petitioner signed joint returns for the years 1960 through 1971 and 1973. She has not claimed that any of these returns were signed under duress. Petitioner did not disavow her signature on the 1972 return although the did consult with her *454 attorney shortly after she signed it. The first time petitioner raised the issue of duress was ten years after she signed the return. It would appear that the idea of disavowing the return on the basis of duress was an "afterthought." See Federbush v. Commissioner,34 T.C. 740, 755 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963). As discussed above, it is concluded that petitioner was not deprived of contractual volition in signing the 1972 joint Federal income tax return. She is therefore jointly and severally liable for any deficiency with respect thereto. An appropriate order will be entered.