JOHN T. PETTIT and JO BETTY PETTIT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pettit v. Commissioner
Docket No. 13640-80.
United States Tax Court
T.C. Memo 1984-460; 1984 Tax Ct. Memo LEXIS 219; 48 T.C.M. (CCH) 972; T.C.M. (RIA) 84460; August 28, 1984. *219 Held:
(1) H and W are liable for the addition to tax for fraud under sec. 6653(b), I.R.C. 1954, for 1975. (2) The statute of limitations does not bar the assessment of the deficiency and the addition to tax under sec. 6653(b), I.R.C. 1954, for 1975. John T. Pettit and Jo Betty Pettit, pro se. Karl D. Zufelt, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' Federal income taxes: Additions to Tax
Sec. 6653(a)
Sec. 6653(b)
Year
Deficiency
I.R.C. 1954 [1]
I.R.C. 1954
1975
$15,644.00
$7,822.00
1976
22,722.00
$1,136.10
1977
32,405.50
1,620.28
*220 The issues for decision are whether the petitioners are liable under section 6653(b) for the addition to tax for fraud for 1975 and whether the assessment of the deficiency in income tax and the addition to tax for fraud for 1975 is barred by the statute of limitations. FINDINGS OF FACT None of the facts have been stipulated. The petitioners refused to participate in preparing a stipulation of facts for trial. The petitioners, John T. and Jo Betty Pettit, were residents of Pasadena, Calif., at the time they filed their petition in this case. They filed Federal income tax returns for 1975, 1976, and 1977 with the Internal Revenue Service, claiming to be married filing jointly. Mr. Pettit will sometimes be referred to as the petitioner. The petitioner holds a doctoral degree in physics and the equivalent of a doctoral degree in mathematics. During the years in issue, he was an employee of Summa Corporation (Summa) in charge of Summa's computer operations. During 1975, he was director of research and planning and was in charge of Summa's computer development *221 operations. The petitioners prepared their own tax returns for 1975, 1976, and 1977. On their 1975 return, they did not report the petitioner's salary from Summa as such. Instead, they reported the amount listed on the W-2, $68,890, issued by Summa to the petitioner for 1975, as "consulting fees" on a schedule C (Profit or (Loss) from Business or Profession). The petitioners also reported $3,200 on their 1975 schedule C as other income.On such schedule, they deducted $44,487 as business expenses. Included in such amount were the following expenses: $3,865 for auto and truck expense (gas. oil, lube, repairs, and maintenance), $1,778 for equipment rental, $1,797 for office supplies and expenses, $2,589 for postage, $23,349 for professional services (engineering and legal), $486 for taxes and license, and $1,336 for telephone and utilities. On their 1975 return, the petitioners also deducted, as itemized deductions, $1,909 for medicine and drugs, $664 for medical and dental expenses (doctors and dentists), $1,060 for hospitals and labs, and $248 for a medical insurance premium. During 1975, Summa provided the petitioner with two offices, one at the Summa facility in Encino, *222 Calif., and another at the Summa facility in Las Vegas, Nev.Summa also provided the petitioner with an automobile and paid all expenses for repairs, maintenance, gasoline, licenses, and insurance. During 1975, Summa had a policy of liberally reimbursing employees, such as the petitioner, for any expenses that had any connection with their employment. Throughout 1975, the petitioner submitted expense vouchers to Summa and was reimbursed.The petitioner did not incur any unreimbursed expenses in connection with his employment at Summa. The Commissioner began an audit of the petitioners' 1975 tax return in November 1977. During the audit, the petitioner claimed that he was a consultant for Summa and that the expenses claimed on the petitioners' 1975 schedule C were related to his employment with Summa. He also claimed that included in the $23,349 deducted for professional services was $8,397 paid to Planned Environment Group (Planned) and $13,500 paid to Dewitt C. Sprague. The petitioner provided no cancelled checks evidencing such payment, but he did furnish receipts. The receipt from Planned was dated December 6, 1977, the acknowledged payment from IPL during 1975 for "Professional *223 Services, consulting, studies in economic feasibility, corporate planning." Planned was a California corporation, partially owned by the petitioner, which had been suspended from doing business as a corporation in 1973 and had not been reinstated as of 1983. The record is silent with respect to IPL. The receipt from Mr. Sprague was prepared at the petitioner's direction and dated November 30, 1977. It acknowledged payment from IPL during 1975 for "professional consulting services" and for "systems definition." Mr. Sprague actually performed no such services. He did receive $13,500 from the petitioner for the purpose of purchasing postage stamps on the petitioner's behalf. During the audit, it was established that the petitioners deducted, as office expenses, $1,284 that was actually spent for business suits. In addition, of the amount deducted for equipment rental, the audit established that at least $774 was for personal clothing. During 1975, the petitioner, as an employee of Summa, was covered by a health insurance plan which covered all of his and his family's medical, dental, and drug expenses. The plan had no deductible, and the petitioner did not pay any amount for *224 such insurance. The petitioners' medical, dental, and drug expenses during 1975 were compensated for by insurance. OPINION At the trial, the Commissioner made an oral motion to have the petitioners declared in default and to enter decision against them pursuant to Rule 123(a), Tax Court Rules of Practice and Procedure, [2] with respect to the deficiencies and the additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. At that time, the Court announced that it would grant such motion. The petitioners have the burden of disproving the Commissioner's determination as to the deficiencies.Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). They also have the burden of disproving the Commissioner's determinations as to the additions to tax under section 6653(a). Rule 142(a); Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). The petitioners refused to participate in preparing a stipulation of facts for trial. At trial, the petitioner declined to offer any evidence to disprove the Commissioner's determination *225 as to the deficiencies and the additions to tax under section 6653(a). Clearly, the petitioners failed to proceed with their case and failed to sustain their burden of proof. [3] Accordingly, we decided to grant the Commissioner's motion. See Miller v. Commissioner,654 F.2d 519, 520-521 (8th Cir. 1981), affg. an unpublished order of this Court; Ritchie v. Commissioner,72 T.C. 126, 128-129 (1979); Gilday v. Commissioner,62 T.C. 260, 262-263 (1974). *226 The remaining issues are whether, based on the record, the petitioners are liable under section 6653(b) for the addition to tax for fraud for 1975, and whether the assessment of the deficiency in income tax and the addition to tax for fraud for 1975 is barred by the statute of limitations. Section 6653(b) provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. The Commissioner has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b); Levinson v. United States,496 F.2d 651, 654-655 (3d Cir. 1974); Miller v. Commissioner,51 T.C. 915, 918 (1969).The Commissioner will carry his burden if he shows that the taxpayer intended to evade taxes which he knew or believed that he owed by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366, 377-378 (5th Cir. 1968), *227 affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107, 111-112 (1956). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed, but rather must be established by affirmative evidence. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Circumstantial evidence is permitted where direct evidence of fraud is not available. Spies v. United States,317 U.S. 492, 499 (1943); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Gajewski v. Commissioner,67 T.C. at 200. Fraud may properly be inferred where an entire course of conduct establishes the necessary intent. Rowlee v. Commissioner,supra;Stone v. Commissioner,56 T.C. 213, 223-224 (1971). The precise amount of underpayment resulting from fraud need not be proved. Otsuki v. Commissioner,53 T.C. 96, 105 (1969). The statute requires only a showing that "any part" *228 of an underpayment results from fraud. However, the Commissioner must show fraud resulting in an underpayment for each taxable year in issue. Otsuki v. Commissioner,supra.
In the present case, the evidence clearly establishes that the petitioners fraudulently underpaid their income tax for 1975. During the audit of their 1975 return, the petitioner claimed that he was a consultant for Summa and that the expenses claimed on the petitioners' 1975 schedule C were related to his employment with Summa. In fact, the petitioner was an employee of Summa, and Summa reimbursed him for any expense incurred on its behalf. Conduct designed to mislead the Commissioner's agents strongly evidences an intent to evade tax. McGee v. Commissioner,519 F.2d 1121, 1126 (5th Cir. 1975), affg. 61 T.C. 249 (1973); Estate of Upshaw v. Commissioner,416 F.2d 737, 741 (7th Cir. 1969), affg. a Memorandum Opinion of this Court; Smith v. Commissioner,32 T.C. 985, 987 (1959). Moreover, in the present case, we have found as a fact that the petitioner incurred no unreimbursed expenses in connection with his employment *229 at Summa.We fully recognize the proposition that the Commissioner cannot meet his own burden of establishing fraud on the basis of the petitioners' failure to discharge their burden of proving error in his determination. Estate of Beck v. Commissioner,56 T.C. 297, 363 (1971); Otsuki v. Commissioner,53 T.C. at 106. However, our finding of fraud is not based on the petitioners' failure of proof. There is a considerable amount of other evidence indicating that the petitioners intentionally claimed deductions to which they knew they were not entitled, thereby intentionally understating their income, and that they undertook to conceal the true nature of such deductions from the Commissioner's agents, thereby evading the payment of taxes. The petitioner's claim that he was somehow involved in business ventures in addition to his employment with Summa is simply not supported by the record. This Court is not bound to accept testimony at face value, even if uncontroverted, if it is inherently improbable or manifestly unreasonable. Quock Ting v. United States,140 U.S. 417, 420-421 (1891); Archer v. Commissioner,227 F.2d 270, 273 (5th Cir. 1955), *230 affg. a Memorandum Opinion of this Court; Boyett v. Commissioner,204 F.2d 205, 208 (5th Cir. 1953), affg. a Memorandum Opinion of this Court.In addition, the Petitioner's refusal to testify specifically concerning such "business ventures" gives rise to the presumption that such testimony, if given, would have been unfavorable to the petitioners' case. Stoumen v. Commissioner,208 F.2d 903, 907 (3d Cir. 1953), affg. a Memorandum Opinion of this Court; Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). The evidence in the record convinces us that the Commissioner has clearly established the petitioners' fraudulent intent with respect to certain of the deductions claimed on their 1975 return. Of the $23,349 claimed on the petitioners' schedule C as a deduction for professional services, $8,397 was paid to Planned and $13,500 was paid to Mr. Sprague. The evidence shows that Planned, a California corporation, was partially owned by the petitioner and that during 1975 it was suspended from doing business as a corporation. Such facts, when considered in light *231 of Summa's policy of reimbursing any expense incurred by its employees on its behalf, make us highly suspect of the petitioner's claim they payments to Planned, if there were any, constitute a legitimate business expense. Yet, the little that we know about Planned and the deduction taken by the petitioners for professional services supposedly provided by Planned may not be sufficient to warrant our finding fraudulent intent on the basis thereof. We need not and do not make such a finding. On the other hand, the $13,500 deduction taken for professional services supposedly provided by Mr. Sprague does clearly evince fraudulent intent. Mr. Sprague testified at trial. He specifically testified that he provided no professional services to the petitioner and that the receipt which he signed at the petitioner's request was false. Mr. Sprague did receive $13,500 from the petitioner during 1975 in order to purchase postage stamps for investment purposes. In addition, the petitioners attempted to deduct amounts spent on business suits and personal clothing under the guise of office expenses and equipment rental. The petitioners' medical and drug deductions taken on their 1975 return *232 also establish fraudulent intent. The petitioners may have incurred such expenses, but during 1975, they were covered by Summa's health insurance plan which had no deductible and which covered all of the family's medical, dental, and drug expenses. It is clear from the record that the petitioners were reimbursed for their medical and drug expenses, and yet they deducted such expenses on their 1975 return. Accordingly, based on the entire record before us, we hold that the Commissioner has shown by clear and convincing evidence that the petitioners are liable for the addition to tax for fraud under section 6653(b). Our resolution of this issue makes it unnecessary for us to consider the Commissioner's alternative contention that we should hold the petitioners in default pursuant to Rule 123(a) with respect to the fraud addition. The final issue for decision is whether the assessment of the deficiency in income tax and the addition to tax for fraud for 1975 is barred by the statute of limitations. Since the Commissioner has sustained his burden of proving fraud for 1975, the statute of limitations remains open under section 6501(c)(1). Estate of Temple v. Commissioner,67 T.C. 143, 159-160 (1976); *233 Harper v. Commissioner,54 T.C. 1121, 1142 (1970). An appropriate order will be issued and decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
3. At trial, the petitioner was called as a witness by the Commissioner. Asserting a Fifth Amendment claim of privilege against self-incrimination, he refused to answer certain questions concerning income and deductions reported on the petitioners' 1975 income tax return. The petitioner also invoked his constitutional rights under the First, Fourth, Sixth, Ninth, Tenth, and Thirteenth Amendments. When the Court asked the petitioner to articulate his grounds for claiming the Fifth Amendment, he refused to do so. The Commissioner's attorney had previously stated that a prior criminal investigation of the petitioner had been terminated in 1979 and that there was presently no pending criminal investigation of either of the petitioners. Furthermore, the Commissioner's attorney pointed out that with respect to 1975, the statute of limitations barred a criminal tax prosecution.Thereafter, the Court ordered the petitioner to respond to the Commissioner's questions. The petitioner continued to refuse to answer certain questions and persisted in asserting that he had a Fifth Amendment right not to answer. The petitioners also asserted such claim in their brief. It is well settled that the privilege against self-incrimination may be invoked only when an answer to the question posed would expose the petitioner to a real danger of prosecution; remote or speculative possibilities of prosecution for unspecified crimes are not sufficient to justify a failure to respond. McCoy v. Commissioner,696 F.2d 1234, 1236 (9th Cir. 1983), affg. 76 T.C. 1027 (1981); United States v. Neff,615 F.2d 1235, 1239-1240 (9th Cir. 1980); Reiff v. Commissioner,77 T.C. 1169, 1174 (1981). Although given the opportunity by the Court at trial to explain his reason for claiming the Fifth Amendment privilege, the petitioner refused to do so. Such a blanket claim of the privilege against self-incrimination must be rejected as unjustified. United States v. Sullivan,274 U.S. 259, 263-264 (1927); Rechtzigel v. Commissioner,79 T.C. 132, 138-139 (1982), affd. per curiam 703 F.2d 1063↩ (8th Cir. 1983).