William **LEVINSON**
and
William **Levinson,** Assignee of **F. M. P. Corporation,** formerly known as **Fairmount Motor Products Co., Inc.,** Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 73–1909.

United States Court of Appeals,
Third Circuit.

Argued Feb. 25, 1974.

Decided May 8, 1974.

---

Andrew F. Mimnaugh, John T. Clary, Thomas J. Mullaney, Philadelphia, Pa., for appellants.

Scott P. Crampton, Meyer Rothwacks, Elmer J. Kelsey, David English Carmack, Washington, D. C., Robert E. J. Curran, Philadelphia, Pa., for appellee.

Before HUNTER and WEIS, Circuit Judges, and MILLER, District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

The sole issue on this appeal is the determination of the proper method by which civil tax fraud penalties are to be assessed under 26 U.S.C. § 6653. The Internal Revenue Service ("IRS") assessed a 50% fraud penalty on the difference between taxpayers' true tax liability and the tax liability shown on taxpayers' original tax returns. The district court upheld this method of computation and we affirm.

Taxpayers' returns for 1967 through 1959 were timely filed and the taxes shown thereon timely paid. When the IRS subsequently conducted routine examinations of these returns, adjustments were made resulting in the assessment of additional taxes. Subsequent to this, taxpayers filed amended returns reporting income which had not been included in the original tax returns. The IRS then began an investigation which uncovered further unreported income of taxpayers and which eventually resulted in the bringing of fraud charges against taxpayers. On this appeal taxpayers do not contest their tax liability or the finding of fraud.

■ Taxpayers do contend, however, that the fraud penalty should not be applied to those deficiencies assessed because of adjustments made to the original tax return at the time routine audits were conducted. The additional taxes assessed at this time resulted from adjustments to inventories and business deductions. These adjustments apparently were not the subject of the subsequent fraud investigation which was based on omitted income. Thus the taxpayers suggest that the fraud penalty should have been computed by the following formula:

50% × [correct tax—(tax shown on original timely filed return + additional tax assessed because of routine audit on original return)]

The fraud penalty was actually computed on the basis of this formula:

50% × [correct tax—tax shown on original timely filed return]

Taxpayers argue that the decisional law and applicable statute supports their view that the fraud penalty should not apply to nonfraudulent deficiencies assessed as a result of routine adjustments made to their original returns. We do not agree.

Under the Internal Revenue Code of 1939, the fraud penalty provision, section 293(b), provided that "if *any part* of any deficiency is *due to fraud* . . . then 50 per centum of the *total amount of the deficiency* . . . shall be so assessed . . . ." (Emphasis added.) "Deficiency" was defined un-

der section 271(a) by the following formula:

deficiency = correct tax—(tax shown on return + amounts previously assessed or collected without assessment —rebates) [1]

Where there have been several deficiencies, this definition quite logically requires that, in computing the amount of any new deficiency, credit should be given for deficiencies previously assessed or collected.

In computing the fraud penalty under the 1939 Code, however, courts consistently refused to apply the penalty to only this narrowly defined deficiency. *E.g.*, Middleton v. Commissioner, 200 F. 2d 94 (5th Cir. 1952); Romm v. Commissioner, 245 F.2d 730 (4th Cir.), cert. denied, 355 U.S. 862, 78 S.Ct. 94, 2 L. Ed.2d 68 (1957). Since the fraud penalty provision referred to "the total amount of the deficiency," courts consistently reasoned that where more than one deficiency had been assessed, the penalty applied to all of the deficiencies; [2] thus, the total deficiency was held to be the difference between the correct tax and the tax shown on the original return. Romm v. Commissioner, *supra*; Middleton v. Commissioner, *supra*; Still, Inc. v. Commissioner, 19 T.C. 1072 (1953); Wilson v. Commissioner, 7 T.C. 395 (1946); J. S. McDonnell v. Commissioner, 6 B.T.A. 685 (1927).

Contrary to what taxpayers suggest, we have found no decision under the 1939 code which deviated from this method of computing the fraud penalty or even suggested that in certain situations a different method of computation would apply. Taxpayers rely heavily on J. S. McDonnell v. Commissioner, 6 B.T. A. 685 (1927) as support for the proposition that in computing the fraud penalty the IRS should allow taxpayers "legitimate adjustments" to the tax as reported on the original return.[3]

Taxpayers, however, have misread *McDonnell*. The 50% fraud penalty in that case was applied to the difference between the correct tax and the tax shown on the original return.[4] The court specifically held that no error had been committed in the method of computation of the penalty.[5] What the court did say, which is far different from that contended by the taxpayers, is that in computing the total tax liability and hence the correct deficiency, the IRS had failed to give credit for legitimate deductions and losses. Taxpayers, however, have not contested the final tax liability determined by the IRS and therefore *McDonnell* does not support taxpayers' position. It is also significant that *McDonnell* was specifically cited by the same court in Wilson v. Commissioner, 7 T.C. 395, 398 (1942) when it noted that,

"[S]ince the Revenue Act of 1918, the [IRS] has consistently computed the [fraud] penalty upon the *total amount understated on the return* and in every instance in those cases coming before us of which we are aware, we have approved the computation." (Emphasis added.)

We therefore conclude that under the Internal Revenue Code of 1939, it was the court-sanctioned practice of the IRS to compute fraud penalties on the difference between the correct tax and the tax shown on the original return. The only question remaining then is whether the

---

1. *See* Kurtzon v. Commissioner, 17 T.C. 1542, 1548 (1952); Rev.Rul. 60–214, 1960–1 Cum-Bull. 700.

2. The effect of this was to refuse to follow the literal definition of deficiency (which would require that credit be given for previously assessed deficiencies) whenever the fraud penalty was imposed. *See, e. g.*, Romm v. Commissioner, *supra*.

3. Brief of Appellants at 9.

4. 6 B.T.A. at 690–691. See Wilson v. Commissioner, 7 T.C. 395, 398 (1946), wherein the same court explained that in *McDonnell* it had "held that the penalty was to be computed upon the entire excess of the tax liability over that shown on the return."

5. 6 B.T.A. at 695.

enactment of the Internal Revenue Code of 1954 affected changes in this substantive policy. We think not.

The present fraud penalty provision, 26 U.S.C. § 6653(b), differs from its predecessor only in its use of the word "underpayment" rather than deficiency:

> "If *any part* of any underpayment . . . of tax required to be shown on a return *is due to fraud*, there shall be added to the tax an amount equal to 50 percent of the underpayment." (Emphasis added.)

"Underpayment" is defined in section 6653(c) [6] by reference to the definition of deficiency in 26 U.S.C. § 6211 [7] which is virtually identical to its predecessor, section 271(a). Section 6653(c), however, states that for purposes of defining deficiency, only the tax shown on the original timely filed return is to be considered.

On their face these changes appear minor and at most appear to merely clarify what the practice had been under the 1939 Code. That this was the Congressional intent is unquestionably clear from the legislative history.[8] We thus agree with the Second Circuit that the Internal Revenue Code of 1954 did not change the method of computing the fraud penalty and that the method by which the IRS has computed the penalty in the present case is proper under 26 U.S.C. § 6653. *See* Papa v. Commissioner, 464 F.2d 150 (2nd Cir. 1972).

In view of taxpayers' insistence that deficiencies assessed as a result of the routine audit of their returns must be applied as a credit pursuant to 26 U.S.C. § 6211(a)(1)(B), a few further observations appear necessary. First, section 6211(a)(1)(B) is identical to its predecessor under the 1939 Code, section 271(a)(1)(B), and as noted previously, prior deficiencies were never applied under the 1939 Code as a credit in determining the "total" deficiency subject to the fraud penalty.

Second, taxpayers suggest that previously assessed deficiencies should be applied as credit under section 6211(a)(1)(B) *just in some circumstances*.[9] Yet, there is no support in the statute, its legislative history or in the case law for applying section 6211(a)(1)(B) selectively.

Third, the inequities of taxpayers' position is manifest. Had there been only one deficiency assessed coupled with a finding that at least a part of the underpayment was due to fraud, then there would not have been any previously assessed deficiency for which taxpayers could claim a credit under section

---

6. 26 U.S.C. § 6653(c) provides; *inter alia:*
   "For purposes of this section, the term 'underpayment' means—
   "(1) *Income, estate, and gift taxes.*—In the case of a tax to which section 6211 (relating to income, estate, and gift taxes) is applicable, a deficiency as defined in that section (except that, for this purpose, the tax shown on a return referred to in section 6211(a)(1)(A) shall be taken into account only if such return was filed on or before the last day prescribed for the filing of such return, determined with regard to any extension of time for such filing) . . . . "

7. 26 U.S.C. § 6211 provides, *inter alia:*
   "*Definition of a deficiency*
   "(a) *In general.*—For purposes of this title in the case of income, estate, and gift taxes, imposed by subtitles A and B, the term 'deficiency' means the amount by which the tax imposed by subtitles A or B exceeds the excess of—

"(1) the sum of
   "(A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
   "(B) the amounts previously assessed (or collected without assessment) as a deficiency, over—
   "(2) the amount of rebates, as defined in subsection (b)(2), made."

8. For a discussion of the legislative history see Papa v. Commissioner, 464 F.2d 150, 152 (2nd Cir. 1972).

9. Taxpayers apparently argue that section 6211(a)(1)(B) should be applied just to those deficiencies assessed because of "legitimate adjustments" made to their original timely filed returns as a result of a routine audit. Presumably, they would add that this previously assessed deficiency was not due to fraud.

6211(a)(1)(B). The fraud penalty quite clearly would have been applied to the total underpayment, *i. e.*, the difference between the correct tax and the tax shown on the original timely filed return. It does not seem likely that Congress would have conditioned the severity of the fraud penalty on such a fortuity as whether or not a routine audit had been conducted prior to the assessment giving rise to the fraud charge.

■ Lastly, if there is ambiguity in the statutory language, we think the clear Congressional purpose must prevail.[10] Since Congress unquestionably did not intend to modify the substantive law under the 1939 Code, we agree with the Second Circuit that the fraud penalty under 26 U.S.C. § 6653 is properly computed on the basis of the difference between the correct tax and the tax shown on the original timely filed return. *Accord,* Papa v. Commissioner, 464 F.2d 150 (2nd Cir. 1972).

The order of the district court of August 29, 1973 will be affirmed.

WEIS, Circuit Judge (dissenting):

The dreary pages of the Internal Revenue Code contain few passages of any comfort to the taxpayer. The petitioner here has found several provisions which, when read literally and given their common sense meaning, support his position and bring about an equitable result. It is only by reliance upon previous judicial interpretations, written in response to a need which no longer exists, that the Commissioner is able to prevail, thus increasing the government's revenue but diminishing the resources of the taxpayer. Since I believe that the plain wording of the statute should prevail, I must dissent.

As the majority concedes, the fraud penalty is computed on the "underpayment,"[1] which term is defined as a "deficiency,"[2] which means the amount by which the correct tax exceeds the sum of (a) the amount shown on the taxpayer's return plus (b) amounts previously assessed.[3]

I agree with the majority's statement of the formula:

deficiency = correct tax—(tax shown on return + amounts previously assessed).

Applying the statute literally means that the taxpayer here should pay the penalty of 50 percent only on the amount of tax due because of fraud and not on that portion of the tax which had been paid as a result of a previous assessment based on adjustments for items as to which there was a legitimate basis for difference of opinion. This result is sound and would appear to be eminently reasonable.

The difficulty is that years ago in construing earlier versions of the Internal Revenue Code, the Tax Court found a "loophole" which it felt obliged to

---

10, *See, e. g.,* United States v. American Trucking, 310 U.S. 534, 543–549, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

1. Section 6653(b) of the Internal Revenue Code of 1954:
"If any part of any underpayment . . . of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment."

2. Section 6653(c) of the Internal Revenue Code of 1954.

3. Section 6211 of the Internal Revenue Code of 1954:
"Definition of a deficiency

(a) In general.—For purposes of this title in the case of income, estate, and gift taxes, imposed by subtitles A and B, the term 'deficiency' means the amount by which the tax imposed by subtitles A or B exceeds the excess of—
(1) the sum of
(A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
(B) the amounts previously assessed (or collected without assessment) as a deficiency, over—
(2) the amount of rebates, as defined in subsection (b)(2), made."

close. The problem was articulated in *Still v. Commissioner,* 19 T.C. 1072, aff'd, 218 F.2d 639 (2d Cir. 1959), where the court said at 1077:

"A taxpayer who had filed a fraudulent return would merely take his chances that the fraud would not be investigated or discovered, and then, if an investigation were made, would simply pay the tax which he owed anyhow, and thereby nullify the fraud penalty."

This rationale was adopted by the Courts of Appeal in *Middleton v. Commissioner,* 200 F.2d 94 (5th Cir. 1952), and *Romm v. Commissioner,* 245 F.2d 730 (4th Cir. 1957), cert. denied, 355 U.S. 862, 78 S.Ct. 94, 2 L.Ed.2d 68 (1957). These cases involve tax assessments prior to the enactment of the 1954 Code, and in each one all of the deficiencies were based on fraud. While there might be some argument about the court's power to ignore the wording of the statute, nevertheless the equities favor the result.

The "loophole" about which the courts were concerned was closed through congressional action in 1954 by including in section 6653(c) a provision that the "amount shown on a taxpayer's return" means a return which is timely filed. Thus, a taxpayer who learns that his tax liability is being questioned and who files a later amended return can secure no reduction of the amount of the penalty due by such action. The calculation of the fraud penalty after 1954 clearly involves only the original return, not an amended one. Therefore, the opportunity to "make sport of the so-called fraud penalty" which concerned the *Still, supra,* and *Romm, supra,* courts is no longer available.

*Papa v. Commissioner,* 464 F.2d 150 (2d Cir. 1972), failed to note the pertinent change in the 1954 Code and, adopting the reasoning of the older cases,[4] refused to allow credit for an earlier assessment made by the Internal Revenue Service. However, *Papa, supra,* was in the nature of an ex parte proceeding, the appeal having been taken by the Commissioner and not contested by the taxpayer. Furthermore, the earlier deficiency which the court refused to credit was also fraudulent. Equities, therefore, favor the result in *Papa, supra,* as they did in the earlier cases.

Here, however, fundamental fairness supports the taxpayer's position, and there would seem to be no reason why we should apply decisional law today which was originally developed to remedy a statutory infirmity since cured by legislative revision.

The majority finds fault with petitioner's contention that a deficiency under section 6211(a)(1)(B) should be credited only in circumstances of nonfraudulent assessments, and dismisses the taxpayer's position by saying that there is no support in the statute for such an interpretation. We need not reach that point in this case, although to my mind the taxpayer's interpretation is far preferable to the one which the courts have made over the years by completely disregarding credit for all prior assessments paid despite the plain wording of the statute. The petitioner's suggestion requires only a modest construction to promote equity, while the decisional law involves a major interpretation which furthers inequity.

I would give to the petitioner that which the statute requires and reverse the decision of the district court.

4. *Still, supra, Romm, supra,* and *Wilson v. Commissioner,* 7 T.C. 395 (1946).