LEO W. SCOTT and MAXINE B. SCOTT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scott v. Commissioner
Docket No. 33916-83.
United States Tax Court
T.C. Memo 1986-102; 1986 Tax Ct. Memo LEXIS 507; 51 T.C.M. (CCH) 603; T.C.M. (RIA) 86102; March 17, 1986. *507 Held, Ps' failure to report gross receipts from their sole proprietorship over a 4-year period was due to fraud within the meaning of sec. 6653(b), I.R.C. 1954. Harrison T. Slaughter, Jr., for the petitioners. Francis C. Mucciolo, for the respondent. SIMPSON
MEMORANDUM OF FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner and the petitioners agreed on the amount of the deficiency in income *508 tax for each of the years 1974 through 1977, prior to the issuance of the notice of deficiency in this case. In addition, the Commissioner determined the following additions to the petitioners' Federal income taxes: Addition to Tax
Sec. 6653(b)
Year
I.R.C. 1954 [1]
1974
$9,139.31
1975
1,931.10
1976
5,261.83
1977
10,071.60
The only issue for decision is whether the petitioners' failure to report gross receipts from their trucking business in the taxable years 1974 through 1977 was due to fraud within the meaning of section 6653(b). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. [2]
*509 The petitioners, Leo W. and Maxine B. Scott, husband and wife, maintained their legal residence in Ozona, Florida, when they filed their petition in this case. They filed joint Federal income tax returns for 1974 through 1977 with the Internal Revenue Service Center, Atlanta, Georgia. During the years at issue, the petitioners owned and operated a sole proprietorship known as Barlow and Scott Trucking, or Scott Trucking. Prior to 1968, the petitioners owned and operated the business with Mrs. Scott's father. The main activities of the business included hauling landfill materials and renting earth moving equipment. In January 1974, Mrs. Scott, a high school graduate, retired from her job as a bank teller after 27 years at the Sun First National Bank of Dunedin. At the bank, she was responsible for cashing checks, taking deposits, balancing her daily cash, preparing State sales tax reports, and handling similar matters. During the years in issue, Mrs. Scott performed various office tasks at Scott Trucking, including: answering the phone, running errands, writing checks, typing most of the billing invoices, and occasionally depositing money in the Scott Trucking checking account. *510 Mrs. Scott also prepared the State sales tax reports using information provided by her husband. At a minimum, she prepared invoices in the amounts of: $66,797.87 in 1974, $78,928.49 in 1975, $131,891.34 in 1976, and $213,787.24 in 1977. Mr. Scott, a high school graduate and former insurance agent, was responsible for the operation of Scott Trucking. Among other responsibilities, he kept track of overdue customer accounts by writing the information on a loose piece of paper. He sometimes cashed checks received as payment and used the cash to pay business expenses. The receipts from these cash transactions were used, along with check stubs, to document Scott Trucking expenses. Other checks were deposited by either of the petitioners. Checks arising from transactions subject to the State sales tax were deposited in the Scott Trucking checking account; others were deposited in the petitioners' personal checking account. Both accounts were at Sun First National Bank of Dunedin. The petitioners employed the same tax return preparer (tax preparer) during all the years at issue. On a quarterly basis, Mr. Scott provided him with the records from which he prepared the petitioners' *511 income tax returns. Expense information consisted of cancelled checks, receipts for cash expenditures, and similar documentation contained in a box. The revenue information provided by Mr. Scott consisted of quarterly totals from the monthly State sales tax reports. The reported revenue included only receipts from materials sold, not receipts from services provided. As a consequence, in 1974, the petitioners reported receipts of $7,329.50 for Scott Trucking, when the proper figure was $96,838.05; and in 1975, the reported receipts were $5,044.50, while the actual figure was $80,636.65. In 1976, the expense information provided to the tax preparer by Mr. Scott exceeded the $7,306.50 in receipts reported on the State sales tax reports. When the tax preparer pointed out to Mr. Scott that the expenses exceeded the receipts, Mr. Scott produced a Form 1099 from Scarborough Construction Company (Scarborough), which raised reported receipts to $74,465.33. This was the first time a Form 1099 from Scarborough was provided to the tax preparer, even though Scott Trucking received substantial income from Scarborough in both 1974 and 1975. No evidence was presented indicating that the petitioners *512 had provided the tax preparer with any information concerning Scarborough for 1974 or 1975. In 1977, total reported receipts were $89,561.24, with $37.301.81 coming from the State sales tax reports and the remainder from Scarborough. The actual receipts of Scott Trucking were $131,891.34 in 1976 and $213,787.24 in 1977. In 1974, the petitioners sold a parcel of real estate for $33,000.00. They had purchased the parcel in 1972 for $12,500.00. Although they had a gain of $18,288.70 after selling expenses, the item did not appear on their tax return. The petitioners reported some of their interest income for each year, but they failed to report interest income in the amounts of $82.34 for 1974, $277.00 for 1975, $372.00 for 1976, and $1.71 for 1977. Finally, both petitioners voluntarily signed all the returns, and there was no evidence that they did not have an adequate opportunity to review the returns prior to signing. Their signed returns understated taxable income by $53,231.76 for 1974, $20,040.88 for 1975, $38,861.75 for 1976, and $52,605.27 for 1977. OPINION The only issue for decision is whether any part of the underpayment of tax for each of the taxable years 1974 *513 through 1977 was due to fraud within the meaning of section 6653(b). Such section provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. The Commissioner has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Levinson v. United States,496 F.2d 651, 654-655 (3d Cir. 1974); Otsuki v. Commissioner.53 T.C. 96, 105 (1969). To establish fraud, the Commissioner must show that the taxpayer intended to evade taxes which he knew or believed that he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Webb v. Commissioner,394 F.2d 366, 377-378 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958); Acker v. Commissioner,26 T.C. 107, 111-112 (1956). The presence or absence of fraud is a factual question to be determined by an examination *514 of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). However, fraud may be proved by circumstantial evidence since direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct can often be relied on to establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,supra at 105-106. The evidence convincingly establishes that the petitioners fraudulently underpaid their taxes during each of the years at issue. They furnished the information for their tax returns, and those returns understated taxable income by $53,231.76 for 1974, $20,040.88 for 1975, $38,861.75 for 1976, and $52,605.27 for 1977. Such a consistent pattern of underreporting substantial amounts of income, over a period of several years, standing along, is highly persuasive evidence of fraud. Adler v. Commissioner,422 F.2d 63, 66 (6th Cir. 1970), affg. a Memorandum *515 Opinion of this Court; Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962), affg. a Memorandum Opinion of this Court; Davis v. Commissioner,239 F.2d 187, 191 (7th Cir. 1956), affg. a Memorandum Opinion of this Court; Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980)
The petitioners were under a duty to keep adequate books and records. Sec. 6001; sec. 1.6001-1, Income Tax Regs. The petitioners' failure to do so is some evidence of fraud. Harper v. Commissioner,54 T.C. 1121, 1141 (1970); Otsuki v. Commissioner,53 T.C. at 110. The petitioners kept no formal ledgers; rather, they relied on a box full of receipts to document expenses and had no system for documenting total receipts. For 1974 and 1975, they reported only those receipts which were reported on their State sales tax reports, but not all of their receipts were subject to the State sales tax. When the tax preparer questioned the information furnished by Mr. Scott, he produced the Form 1099 from Scarborough reflecting the receipt of substantial additional income. *516 It is significant that the petitioners arranged to furnish records of their expenses to their tax preparer, but they neglected to inform him of the raceipt of a large amount of income for each year. The petitioners' contention that they relied upon their tax preparer to keep the required records is not well founded. First, the evidence showed that he was hired as a tax preparer, not as an accountant or bookkeeper hired to maintain financial records; he simply relied upon the information furnished by Mr. Scott to prepare the tax returns. Additionally, it is apparent that the petitioners withheld information from the tax preparer, so that, regardless of his role, he could not produce an accurate return.For example, he was supplied with the bank statements from the Scott Trucking checking account, but he was not given the petitioners' personal checking account statements, which contained business deposits arising from transactions not subject to State sales tax. The petitioners' failure to report their interest income during the years in question is evidence of fraud. Although the amounts involved were small, the petitioners' consistent and unexplained practice of reporting only *517 a portion of their interest income is indicative of fraud, as it clearly shows they were aware of their legal obligation to report interest income, yet chose not to fulfill their duty. The petitioners' failure to report the $18,288.70 gain arising from the sale of a parcel of real estate in 1974 is further evidence of fraud. This was a large sum of money arising out of a memorable transaction which the petitioners should have noticed was missing from their return. The petitioners seek to avoid a finding of fraud by claiming that they did not understand business affairs and that they were not aware of the underreporting. The petitioners argue that any fault lies with the tax preparer because he was incompetent. Alternatively, if fraud is found, they argue that Mrs. Scott should be relieved of liability under section 6653(b)(4) because she did not participate in activities related to Scott Trucking. In support of the argument that their conduct was not fraudulent, the petitioners rely on Revader v. Commissioner,T.C. Memo. 1980-473. In that case, this Court carefully reviewed the entire record in making the determination that the Commissioner had not proven fraud; *518 no one fact was controlling. The case at hand is clearly distinguishable. First, the petitioners have not shown that their tax preparer was incompetent; indeed, they declined to crossexamine him. Second, the underreporting in this case took place over 4 years; whereas in Revader, only 2 years were in question. Finally, in contrast to Revader, we are convinced that the petitioners in this case knew that they were underreporting their income. Each year, Mrs. Scott, a woman with considerable bookkeeping experience, prepared invoices with a total value significantly in excess of the income reported on each return. Mr. Scott directed his wife in this activity and handled the collection and deposit of receipts greatly in excess of the amount of income reported. The discrepancy between the actual and reported income of the petitioners is simply too great to believe that the petitioners were the innocent victims of their tax preparer.Additionally, the ease with which Mr. Scott produced the Form 1099 from Scarborough when the tax preparer pointed out that his expenses exceeded his receipts, after years of not providing that information, indicates that he had a real understanding *519 of what information he should have been reporting. It may be that the tax preparer should have raised more questions about the information furnished him; even so, we are convinced that the petitioners were aware that their actual income grossly exceeded their reported income for the years at issue and that the underreporting cannot be attributed to a lack of understanding of business affairs. Although Mrs. Scott is liable for the deficiencies in income tax under section 6013 because she filed joint returns, she is liable for additions for fraud only if the Commissioner has shown that some part of the underpayment is due to fraud on her part. Sec. 6653(b)(4); Stone v. Commissioner,56 T.C. at 226-228. In light of her 27 years as a teller, her education, and her activities in support of Scott Trucking, we conclude that the Commissioner has shown fraud on the part of Mrs. Scott. A final observation concerning the evidence in this case is appropriate. The petitioners' testimony was at times inconsistent with, and even contradicted, their answers to the Commissioner's written interrogatories. In addition, in their testimony, they displayed an unbelievable inability *520 to recall facts related to their fraud. For example, Mrs. Scott testified that her husband reconciled all the checking accounts; the petitioners' answer to the interrogatories was in agreement. However, Mr. Scott testified that he never reconciled any checking account, because he did not know how to reconcile a checking account. Mrs. Scott testified that she did nothing with reference to running the business, but rather took care of household chores. Yet, in the answers to interrogatories, the petitioners stated that she carried out numerous clerical functions for Scott Trucking. Indeed, the parties stipulated that all the billing invoices used to estimate the stipulated total receipts of Scott Trucking were typed by Mrs. Scott. The convenient inability of the petitioners to recall significant facts was illustrated by Mrs. Scott when she was asked if she recollected the gain from the sale of real estate in 1974, and responded "I couldn't tell you what I bought at the grocery store yesterday." Such conduct seriously undermined the credibility of the petitioners in the view of this Court, particularly with respect to denials concerning Mrs. Scott's knowledge of Scott Trucking operations. *521 Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. The petitioners in their reply brief failed to set forth any objections to the Commissioner's requested findings of fact. Because of the failure to comply with Rule 151(e)(3), Tax Court Rules of Practice and Procedure↩, the Commissioner requests that we adopt his requested findings that were not contradicted by the petitioners. We decline to do so, but rather base our findings of fact upon the evidence and testimony of record.