GARY E. TATUM and PATRICIA D. TATUM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tatum v. Commissioner
Docket No. 28547-87
United States Tax Court
T.C. Memo 1990-119; 1990 Tax Ct. Memo LEXIS 119; 59 T.C.M. (CCH) 52; T.C.M. (RIA) 90119; March 8, 1990
Gary E. Tatum, pro se. David W. Johnson, for the respondent. JACOBS
*170 MEMORANDUM OPINION JACOBS, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: *171 Additions to Tax
Year
Deficiency
Sec. 6653(b)(1) [1]
Sec. 6653(b)(2)
Sec. 6661
1983
$ 27,211
$ 13,605
*
$ 6,803
1984
$ 27,849
$ 13,924
*
$ 6,962
1985
$ 17,978
$  8,989
*
$ 4,495
*120 After concessions by petitioners, the issues for decision are: (1) whether certain "common law business trusts" [2] are recognizable for Federal income tax purposes; (2) whether petitioners are entitled to deductions for a return preparation fee, stock portfolio investment counseling fees, membership dues in the American Law Association, and a depreciation/farm loss; (3) whether petitioner Gary E. Tatum is liable for additions to tax under section 6653(b)(1) and (2) for fraud; (4) whether petitioners are liable for the additions to tax under section 6661 for substantial understatement of income tax liability; and (5) whether damages should be awarded to the United States pursuant to section 6673. *121 Some of the facts of this case have been stipulated and are so found. The stipulations of facts and accompanying exhibits are incorporated herein by this reference. Petitioners, Gary E. Tatum (hereinafter petitioner) and Patricia D. Tatum, husband and wife, resided in Jasper, Texas, at the time of the filing of the petition in this case. They filed joint Federal individual income tax returns for each year in issue. At all relevant times, petitioner was a self-employed optometrist. To avoid repetition, we have combined our findings of fact and opinion for each issue to be decided. I. Validity of the "Trusts"
The common law business trusts involved herein were sold pursuant to a tax shelter program devised by Karl L. Dahlstrom (Dahlstrom) and marketed by the American Law Association (ALA), an organization which Dahlstrom formed. This and other courts have refused to recognize the validity of these trusts for tax purposes. Zmuda v. Commissioner, 79 T.C. 714, 719-722 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Professional Services v. Commissioner, 79 T.C. 888, 920-929 (1982). [3] In fact, for tax year 1982, petitioners *122 litigated in this Court the tax validity of the very trusts involved herein, and we held such trusts to be nullities for Federal income tax purposes. Tatum v. Commissioner, T.C. Memo. 1988-579, affd. without published opinion 886 F.2d 1313 (5th Cir. 1989). The program devised by Dahlstrom was described in United States v. Dahlstrom, 713 F.2d 1423 (9th Cir. 1983), cert. denied 466 U.S. 980 (1984), [4] as follows: Sales of the program took the form of sales of membership in an organization that Dahlstrom had formed called, [sic] the American Law Association (ALA). Purchasers of the program bought membership in the ALA. As members, they were entitled to receive instruction and materials relating to the tax shelter *123 program at ALA two-day seminars. Members attending these ALA seminars were charged fees ranging from $ 6,000 to $ 12,000. At these seminars, Dahlstrom and Ripley instructed members on how to create foreign trust organizations (FTO's) in order to reduce their tax liabilities. The members were also provided with forms for setting up such trust organizations and documenting trust transactions. In addition, members received instruction on a "taxpayer defense program" which consisted of lawful actions a member could utilize in the event of an IRS audit. While the program did not include advice or assistance in preparing a member's income tax return, some of the appellants occasionally assisted a member in establishing his FTO by traveling to the designated country and executing the requisite trust documents on behalf of that member. Members who implemented the ALA tax shelter program caused three trust organizations to be created in a foreign country by a citizen of that country. Typically, trust number *172 one would be named trustee of trusts two and three, although the person implementing the FTO's retained *124 complete control over all three trusts. This tax shelter program contemplated that trust number two would be treated as a non-resident alien (purely for tax purposes) and would be subject to tax on payments from the user of the program. In order to reduce trust two's tax liability, purchasers of the program had trust two make payments to trust three. Payments made to trust three would not represent taxable income since trust three would be a foreign entity receiving income from a foreign source. The final stage of this tax shelter program involved the return to the purchaser of some or all the money he paid to trust number two. In order to achieve this goal, a purchaser would have trust two borrow money from trust three and execute a demand note payable to trust three. Trust three would then transfer the demand note to the purchaser as a gift and the purchaser would demand and receive payments from trust two. This method was premised on 26 U.S.C. section 102 (IRC), which excludes gifts from gross income for income tax purposes, and *125 IRC section 2501 which provides a gift tax exemption for gifts of intangible property by a non-resident alien to a citizen of the United States. United States v. Dahlstrom, 713 F.2d at 1425-1426. In the instant case, petitioner purchased a membership in ALA in 1981 for $ 10,000 for which he received a pre-packaged set of trust forms. Consistent with the program promoted by ALA, petitioner went to Belize where he executed (as the exchangor) three documents, each entitled "Contract and Declaration of Trust" (the contract), in the names of East Texas Trust Company (Texas Trust), Good Times Holding Company (Good Times), and Eastex Optical Operating Company (Eastex). The "creator" of each trust was Lascelle Tillett (Tillett), a Belize citizen. Each contract purported to establish a Belize business trust. The contracts were identical in all respects except for the ownership of trust units and respective trustees. Tillett, as creator, was empowered to appoint a trustee for each trust, and the person so appointed was empowered to name a successor and to elect officers, employees, and agents *126 for the trust. Each trust was to continue for a period of 25 years unless the trustee determined a shorter or longer period. On January 24, 1981, petitioner acquired 100 trust units of Texas Trust in exchange for $ 100; also on the same day, he acquired 100 trust units of Eastex in exchange for the equipment and supplies which he had used in his optometry practice. On January 30, 1981, Texas Trust acquired 100 trust units of Good Times in exchange for $ 50; on the same day, petitioner sold his 100 trust units of Eastex to Good Times for $ 50. Tillett appointed petitioner sole trustee of Texas Trust; [5] petitioner named his wife as his successor. Texas Trust was appointed sole trustee of Eastex and Good Times. Petitioner was elected President of all three trusts. Thus, petitioner had complete dominion and control over Texas Trust, Good Times and Eastex. Eastex purportedly rendered (through petitioner) optical services and sold optical goods in Jasper, Texas. Petitioner had signatory authority *127 over Eastex's bank account, from which he made disbursements for secretarial services, leasing of equipment, and purchasing of optical goods. (Prior to establishing Eastex, petitioner personally employed Eastex's secretaries, owned Eastex's equipment, and purchased the optical goods directly from suppliers.) Petitioner also had signatory authority over Good Times' bank account, into which funds from Eastex were deposited and then disbursed as gifts to petitioner. Eastex filed Forms 1040NR for 1983, 1984, and 1985, which reflected the following: 1983
Gross Receipts
$ 158,789.94 Less: Cost of Goods Sold
109,043.41 Total Income
$  49,746.53 Less Claimed Deductions:
Depreciation
$  3,547.78
Office Expenses
999.79
Supplies
388.42
Taxes
3,525.33
Royalty
63,855.76
Total Deductions Claimed
$  72,317.08 Net Loss
$ (22,570.55)
1984
Gross Receipts
$ 205,172.20
Less: Cost of Goods Sold
130,207.00
Gross Profit
74,965.20
Other Income
2,280.81
Total Income
$  77,246.01
Less Claimed Deductions:
Bank Service Charge
$    110.40
Depreciation
1,415.72
Insurance
156.00
Office Expense
1,256.57
Taxes
3,419.09
Travel & Entertainment
220.00
Royalty
57,944.74
Tax Consultation
25.00
Reimbursement to G. Tatum
3,785.16
Total Deductions Claimed
68,332.68
Net Profit
$   8,913.33
*128 *173 1985
Gross Receipts
$ 198,829.00 Less: Cost of Goods Sold
97,770.00 Gross Profits
101,059.00 Other Income
2,395.00 Total Income
$ 103,454.00 Less Claimed Deductions:
Depreciation
$  1,621.00
Insurance
133.00
Legal & Professional Services
45.00
Office Expenses
1,963.00
Other Interest
510.00
Rent
4,000.00
Repairs
907.00
Taxes
4,301.00
Wages
40,052.00
Royalty
58,000.00
Miscellaneous
50.00
Total Deductions Claimed
$ 111,582.00 Net Loss
$  (8,128.00)
All receipts reported by Eastex came from petitioner. Petitioners deducted the amounts so paid to Eastex on Schedule C (Profit or Loss from Business or Profession) of their tax returns as cost of goods sold and business expenses. Respondent determined the three trusts to be nullities for Federal income tax purposes, and accordingly he treated the income of all three trusts to be that of petitioners. Respondent allowed petitioners certain business expenses (including the cost of goods sold) reported by Eastex. In addition, respondent determined that the amounts paid by petitioner *129 to Eastex were not deductible except for those amounts designated as "royalties" and as "reimbursement to G. Tatum." Good Times received "royalty" payments from Eastex in the amounts of $ 55,000, $ 57,944.74, and $ 58,000 for 1983, 1984, and 1985, respectively. These "royalty" payments were the only income which Good Times received. Neither Good Times nor Texas Trust filed tax returns for any of the years in issue. Good Times made numerous "loans" to petitioners' minor daughter, Andrea, during 1983, 1984, and 1985. These loans were effectuated in the following manner: Andrea would write Good Times requesting to borrow a sum certain. Then, Good Times would acknowledge Andrea's request, in writing, and make the loan. Andrea then would execute a demand note which Good Times would transfer to petitioner as a gift. Petitioner (as holder of the note) would then demand and receive payment from Andrea. Petitioner orchestrated all of these events. In each instance, the sequence of events took place on the same day, "in a matter of minutes across the kitchen table." Each note provided that early demand would waive any accumulated interest; therefore, because all the events to effectuate *130 the loan process occurred on the same day, no interest was paid by Andrea. Petitioner used the funds received by this procedure to pay for his family's living expenses; none was reported as taxable income. During 1983, 1984 and 1985, the loans from Good Times to Andrea aggregated $ 47,100.00, $ 51,750.74, and $ 52,700.00, respectively. Good Times also made "loans" to petitioner and Eastex. For the same reasons expressed in Tatum v. Commissioner, supra, which need not be repeated here, we find that Texas Trust, Good Times and Eastex are devoid of economic substance and are nullities for Federal income tax purposes. Likewise, we herein find that the loans to Andrea and subsequent gifts of the notes to petitioner are nullities for Federal income tax purposes because no true liability ever existed nor was there any economic risk associated with the purported loans. The "loans" and subsequent "gifts" of the note were but separate steps in a series of interdependent steps to channel money to petitioners tax free. The creation and use of these trusts did not alter petitioner's control over, and economic relationship to, the properties transferred to the trusts. *131 Zmuda v. Commissioner, supra; Professional Services v. Commissioner, supra . Rather, only the manner in which the income was reported, and the amount of income reported, changed. It is evident that petitioner's intent in creating these trusts was solely to obtain tax benefits. Attempts to assign income have consistently been rejected by this and other courts since Lucas v. Earl, 281 U.S. 111, 114-115 (1930). "The guiding principle in assignment of income cases is that income is taxed to the person or entity which in fact controls the earning of income." Johnson v. United States, 698 F.2d 372, 374 (9th Cir. 1982). "The principle of Lucas v. *174 Earl, that he who earns income may not avoid taxation through anticipatory assignments no matter how clever or subtle, * * * stands today as a cornerstone of our graduated income tax system." United States v. Basye, 410 U.S. 441, 450 (1973). The form that a transaction takes is not determinative of the tax effects of the transaction. See Gregory v. Helvering, 293 U.S. 465, 468-470 (1935). *132 Consistent with the aforesaid, we look through the trust scheme which petitioner has created. In doing so, we sustain respondent's determination that the income purportedly received by Eastex (and the other trusts) for 1983, 1984, and 1985 is taxable to petitioners. Lucas v. Earl, supra.We further sustain respondent's determination that the amounts paid to Eastex by petitioner (except for those designated as "royalties" and "reimbursement to G. Tatum") are not deductible. For 1984 and 1985 Eastex reported as "other income" interest earned on a bank account over which petitioner had signatory authority. In addition, for 1985, Eastex reported $ 838 as gain from the sale of assets used in a trade or business. Consistent with his position that the trusts were nullities, respondent determined that said interest income and gain are taxable to petitioner. We agree with these determinations. II. Miscellaneous Deductions
Petitioners deducted: (i) with respect to 1983, $ 167 as a depreciation/farm loss; (ii) with respect to 1984, $ 1,000 as a return preparation fee; (iii) with respect to 1983 and 1984, $ 250 (for each year) as membership dues to the *133 American Law Association; and (iv) with respect to 1985, $ 687 as a stock portfolio investment counseling fee. Respondent disallowed all of these deductions. Respondent's determination is presumptively correct. Petitioners presented no evidence to substantiate their entitlement to these deductions; accordingly, respondent's disallowance of these deductions is sustained. Rule 142(a). III. Fraud Additions to Tax
Respondent determined that with respect to petitioner Gary E. Tatum alone the underpayment of tax for each year involved was due to fraud; accordingly, respondent determined that he is liable for the additions to tax under sections 6653(b)(1) and (2) for each of such years. Section 6653(b)(1) provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. Section 6653(b)(2) provides for additional interest with respect to the portion of underpayment due *134 to fraud. The burden of proving fraud is on respondent; such burden can be met only by clear and convincing evidence. Section 7454(a); Rule 142(b); Levinson v. United States, 496 F.2d 651, 654-655 (3d Cir. 1974), cert. denied 419 U.S. 1040 (1974); Gajewski v. Commissioner, 67 T.C. 181, 200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). To meet his burden, respondent must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be determined from an examination of the entire record. Kotmair v. Commissioner, 86 T.C. 1253, 1259 (1986); Gajewski v. Commissioner, 67 T.C. at 199. Fraud is never *135 presumed, but rather must be established by affirmative evidence. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Circumstantial evidence is permitted where direct evidence of fraud is not available. Spies v. United States, 317 U.S. 492, 499 (1943); Powell v. Granquist, 252 F.2d 56, 61 (9th Cir. 1958); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Gajewski v. Commissioner, 67 T.C. at 200. Fraud may properly be inferred where an entire course of conduct establishes the necessary intent. Rowlee v. Commissioner, 80 T.C. at 1123; Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). In the instant case, we conclude that petitioner participated in Dahlstrom's program in order to evade the payment of tax which he properly owed. Petitioner impressed us as a knowledgeable individual. He knowingly and intentionally claimed false deductions on Schedule C of the tax returns which he and his wife filed for 1983, 1984, and 1985. He purportedly took deductions which overstated his cost of goods sold in order to understate his taxable income. He knew that a substantial *136 amount of the payments he made to Eastex would be returned to him through a convoluted scheme. The tax law does not require us to accept labels given to documents. We can, and should, look through labels attached to the chain of documents which are devoid of economic reality. Here, the "loans" from Good Times to petitioners' daughter, Andrea, and the subsequent "gifts" of Andrea's notes to petitioner are nothing more than an elaborate scheme designed to prevent the collection of taxes. Respondent has demonstrated by clear and convincing evidence that petitioner had a specific *175 intent to evade tax for each of the years involved. Accordingly, we sustain respondent's determination with regard to the additions to tax for fraud under sections 6653(b)(1) and (2). IV. Substantial Understatement Addition to Tax
Respondent determined that petitioners are liable for additions to tax under section 6661 for taxable years 1983, 1984 and 1985. For tax returns due after December 31, 1982, section 6661(a) imposes an addition to tax on any underpayment attributable to a substantial *137 understatement of income tax. Section 6661(b)(1) defines a substantial understatement of income tax as an understatement exceeding the greater of 10 percent of the tax required to be shown on the return for the year or $ 5,000. The section 6661 addition to tax applies at a rate equal to 25 percent of the underpayment. Pursuant to section 6661(b)(2)(C), in the case of items attributable to a tax shelter, the amount of the understatement shall be reduced if the taxpayer has substantial authority for his treatment of the item and he reasonably believed that the tax treatment of such item was more likely than not the proper treatment. Section 6661(b)(2)(C)(i)(II). Under section 6661, tax shelters are defined as follows: (I) a partnership or other entity, (II) any investment plan or arrangement, or (III) any other plan or arrangement, if the principal purpose of such partnership, entity, plan or arrangement is the avoidance or evasion of Federal income tax. Section 6661(b)(2)(C)(ii). *138 The principal purpose of the Dahlstrom trust plan is the avoidance of Federal income tax; thus, definitionally, such a plan is a tax shelter for purposes of section 6661. Our holding that the Dahlstrom trust plan is a tax shelter, within the meaning of section 6661(b)(2)(C), is consistent with prior opinions of this Court. See Tatum v. Commissioner, supra, and Drager v. Commissioner, T.C. Memo. 1987-483. Petitioners failed to provide any substantial authority for their position, and they have failed to convince us they reasonably believed that the tax treatment of the items was more likely than not the proper treatment. Therefore, the amount of the understatements is not subject to reduction. Accordingly, we sustain the additions to tax determined by respondent under section 6661. V. Damages Under Section 6673
Respondent seeks an award of damages (now called a penalty) pursuant to section 6673. We are reluctant to award a penalty against a taxpayer in a civil fraud case due to the fact that respondent has the burden of proving fraud. On the record before us, we decline to award a penalty to the United States under section *139 6673. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded.↩
*. 50% of the interest due on the entire underpayment ↩
2. The terms "trust," "business trust," "note," "gift," "borrow," "loan," "royalty," "contract," and all related derivations are used herein merely for convenience in describing the form of purported transactions and without intending any inference as to the tax characterization or consequences of any aspect of the transaction.↩
3. Ibabao Medical Corp. v. Commissioner, T.C. Memo. 1988-285; Ripley v. Commissioner, T.C. Memo. 1987-114; Estate of Yeoham v. Commissioner, T.C. Memo. 1986-431, affd. without published opinion 826 F.2d 11 (5th Cir. 1987); Akland v. Commissioner, T.C. Memo. 1983-249, affd. 767 F.2d 618↩ (9th Cir. 1985).
4. See also Ripley v. Commissioner, T.C. Memo. 1987-114↩.
5. Petitioner had no business relationship with Tillett prior or subsequent to the creation of the trusts. Tillett's primary profession was that of a taxi driver and tour guide.↩